[No. 6,597.—Department Two.]

## G. M. DAVIS *v.* WILLIAM SCOTT.

PRE-EMPTION.—The right of pre-emption under the laws of the United States cannot be acquired by intrusion and trespass upon lands in the actual possession of others.

APPEAL from a judgment for the plaintiff, and from an order denying new trial, in the Fifth District Court, County of San Joaquin. BOOKER, J.

The facts are stated in the opinion.

After the decision in Department, the appellant filed his petition that the appeal be reheard in Bank, and the application was denied.

*J. H. Budd*, for Appellant.

*Terry & McKinne*, for Respondent.

At the time of the defendant's entry, the land was actually enclosed, and under cultivation, and no pre-emption right can be acquired by entry on lands in the possession of another. (*Atherton* v. *Fowler*, 6 Otto, 513; *Hosmer* v. *Wallace*, 7 id. 575; *Trenouth* v. *San Francisco*, 100 U. S. Rep. 251.)

*J. H. Budd*, for Appellant (petition for rehearing).

Section 2257, Revised United States Statutes, provides, in express terms, that all lands belonging to the United States, and to which the Indian title is extinguished, shall be subject to the right of pre-emption. The cases relied upon by the Court give an interpretation to the meaning of the pre-emption law of September, 1841 (which is different in its provisions), and no interpretation has ever been made as to the meaning of § 2257.

In the cases of *Atherton* v. *Fowler* and *Hosmer* v. *Wallace*, the former occupants of the land had, under the law, the better right to purchase; and in *Trenouth* v. *San Francisco*, the land in question was not subject to pre-emption. The decision in those cases, therefore, are authority so far only as explained and restricted by the facts involved in them, and the then acts of Congress applicable to such fact. (*Carroll* v. *Carroll*, 16 How. 287; *Lucas* v. *Commissioners*, 44 Ind. 541.)

MORRISON. C. J.:

This is an action of ejectment; and after the evidence was closed, the Court below found the following facts:

## " FINDINGS.

" In this case, the Court finds the following facts:

" 1. That the land in controversy was embraced in a patent issued to the Western Pacific Railroad Company by the United

States Government on the —— day of May, —— A. D. 1870, which was duly recorded in San Joaquin County.

"2. That by articles of consolidation and amalgamation, executed the 22nd day of June, 1870, said Western Pacific Railroad Company and the Central Pacific Railroad Company of California were consolidated and formed into a new corporation, called the Central Pacific Railroad Company, and all the interest to said land, acquired by said patent, were conveyed to and vested in said Central Pacific Railroad Company.

"That on the 5th day of April, 1871, said Central Pacific Railroad conveyed said land by deed to James W. Whitaker, who, on the 9th day of May, A. D. 1874, conveyed the said land by deed to the plaintiff.

"That plaintiff, since said conveyance from Whitaker, has occupied and cultivated said land, having the same enclosed with a substantial fence.

"3. That on the 17th day of July, 1877, the defendant entered upon said land and built a house near the center of the west line, which house he has since occupied, and has cultivated about half an acre of said land.

"That at the time of the entry of the defendant, said tract of land had been plowed by plaintiff, preparatory to sowing a crop of grain.

"That in the winter of 1877, plaintiff sowed in wheat the whole of said land, except the half-acre above mentioned, which was occupied by the defendant.

"4. That on the —— day of March, A. D. 1878, defendant prepared a declaratory statement of his intention to pre-empt said land, and offered to file the same with the register of the land office at Stockton, California, and tendered to the register his fees for filing the same; said register refused to accept and file said declaratory statement, from which refusal defendant appealed to the commissioner of the general land office; and that no decision upon said appeal has been received at the Stockton land office.

"5. That said land is situated in the limits of the Stockton land district. That defendant is a citizen of the United States, over twenty-one years of age, and possesseth qualifications required to pre-empt public land under the laws of the United States.

" 6. That said land is included in the limits of a large tract called Los Moquelemos, which was claimed by one Andreas Pico as having been granted to him by the Mexican Government; which claim was finally rejected by the Supreme Court of the United States, on the 13th day of February, 1865.

"As conclusions of law, the Court finds that the plaintiff have judgment for the possession of said land, and for costs of the action.                S. A. BOOKER, District Judge."

There is no doubt that there was competent evidence before the Court to justify all of the foregoing findings except the 2nd; and to support that finding, the plaintiff offered in evidence a copy, duly certified to by the Secretary of State, of what purported to be articles of consolidation and amalgamation of the Western Pacific Railroad Company and the Central Pacific Railroad Company of California.

By these articles, all of the rights, land, etc., belonging to said companies and to each of them were vested in a corporation called the Central Pacific Railroad Company. The articles of consolidation were executed on the 22nd day of June, 1870.

Objection was made to the introduction of these articles in evidence, on the grounds:

" 1st. That there was no law making said certified copy evidence.

" 2d. There was no evidence that either said alleged Western Pacific Railroad Company, or said Central Pacific Railroad Company of California, was ever a corporation *de jure* or *de facto.*

" 3d. There was no evidence of the execution of the original articles of consolidation by said companies."

In the view we take of this case, it is unnecessary for us to pass upon the correctness of the decision of the Court below in overruling the above objections to the certificate of amalgamation.

The Court finds: " That on the 5th day of April, 1871, said Central Pacific Railroad Company conveyed said land, by deed, to James W. Whitaker, who, on the 9th day of May, 1874, conveyed the said land, by deed, to the plaintiff, and that said plaintiff, since said conveyance from Whitaker, has occupied and cultivated said land, *having the same enclosed with a substantial*

*fence.* That on the 17th day of July, 1877, the defendant entered upon said land, and built a house near the center of the west line, which house he has since occupied, and has cultivated about half an acre of said land. That at the time of the entry of the defendant, said tract of land had been plowed by plaintiff, preparatory to sowing a crop of grain. That in the winter of 1877, plaintiff sowed in wheat the whole of said land, except the half-acre above mentioned, which was occupied by the defendant."

The fourth finding of fact is as follows : " That on the ——— day of March, A. D. 1878, defendant prepared a declaratory statement of his intention to pre-empt said land, and offered to file the same with the register of the land office at Stockton, California, and tendered to the register his fees for filing the same, and said register refused to accept and file said declaratory statement, from which refusal defendant appealed to the commissioner of the general land office, and that no decision of said appeal has been received at the Stockton land office."

The fifth finding is as follows : " The said land is situated in the limits of the Stockton land district. That defendant is a citizen of the United States, over twenty-one years of age, and possesses the qualifications required to pre-empt public land under the laws of the United States."

The statement on motion for a new trial contains the following evidence :

" It was proven, on the part of plaintiff, that on the 9th day of May, 1874, he entered into possession of said land, under said Whitaker, and cultivated the same every year thereafter to grain, until the entry of the defendant thereon on the 18th day of July, 1877. That at the time of such entry said land was summer-fallowed for grain, and was at the time of such entry *enclosed by a good and substantial enclosure,* and had been so enclosed ever since said deed from Whitaker to plaintiff was given. That plaintiff and said James W. Whitaker had been in *exclusive possession* of said land from the 5th day of April, 1871, *until the entry of defendant thereon.*"

Here we have evidence not only of possession, but also of occupation by plaintiff and his grantor, commencing in April, 1871, and continued down to the time of defendant's entry in

July, 1877. The defendant, having made an ineffectual attempt to pre-empt the land in controversy, invaded the plaintiff's possession, and now withholds the possession from him. It is impossible for us to perceive any just claim or right which the defendant can assert in support of his entry. He did not have a pre-emption claim to the land, or to any portion thereof, and could not, under the highest authority of law, become a pre-emptioner thereof. The land was in the actual possession and occupation of the plaintiff at the time the defendant attempted to locate a pre-emption claim thereon, and it was not, therefore, *subject to pre-emption.* This question has been settled by the Supreme Court of the United States. In the case of *Atherton* v. *Fowler,* 96 U. S. Rep. 519, Mr. Justice Miller, delivering the opinion of the Court, says: "Does the policy of the pre-emption law authorize a stranger to thrust men out of their homes, seize their improvements, and settle exactly where they were settled, and by these acts acquire the initiatory right of pre-emption? The generosity by which Congress gave the settler the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to settlements obtained by violence, at the expense of others. The right to make a settlement was to be exercised on *unsettled land; to make improvements on unimproved land.* To erect a dwelling-house did not mean to seize some other man's dwelling. It had reference to *vacant land—to unimproved land ;* and it would have shocked the moral sense of the men who framed these laws, if they had supposed that they extended an invitation to the pioneer population to acquire inchoate rights to the public lands by trespass, by violence, by robbery, by acts leading to homicide, and other crimes of less moral turpitude."

In the above case the conclusion of the Court was, that " no right of pre-emption can be established by a settlement and improvement on a tract of public land, when the claimant forcibly intruded upon the possession of one who had already settled upon, improved, and enclosed that tract."

In the later case of *Hosmer* v. *Wallace,* 97 U. S. Rep. 597, Mr. Justice Field, delivering the opinion of the Court, says: " To create a right of pre-emption there must be settlement, in-

habitation, and improvement by the pre-emptor, conditions which cannot be met when the land is in the occupation of another."

There is a still more recent decision of the same Court (*Trenouth* v. *San Francisco,* 100 U. S. Rep. 25) on this question. The Court there hold that "the claim of one of the intruders as a pre-emptioner, was equally unfounded. 1st. Because the right of pre-emption under the laws of the United States cannot be acquired by intrusion and trespass upon lands in the actual possession of others," etc.

The citation of additional authority upon this point is unnecessary. The above cases clearly establish the law, and we are satisfied with the principle there established.

In our opinion the facts justified the findings of the Court, and the findings sustain the judgment.

Judgment and order affirmed.

Sharpstein, J., Thornton, J., and Myrick, J., concurred.