[No. 6,359.—Department One.]

56   257
81   595

## D. H. SMER v. ABBY DUGGAN ET AL.

PRE-EMPTION — ACT OF JULY 23rd, 1866 — CONSTRUCTIVE TRUST.—The plaintiff settled upon the land in controversy, which was within the exterior limits of an unsurveyed Mexican grant, and was ejected by the grantees; but afterwards moved upon a part of the section outside the limits of the grant, the part of the section within the grant being occupied at the time of the settlement by one L., a grantee of the Mexican grantee; and thereafter, July 16th, 1866—the land having been excluded from the final survey, and surveyed—the plaintiff, being a qualified pre-emptor, filed his declaratory statement claiming the whole of the quarter-section, and in September following made proof of his claim before the register and receiver, and was by them allowed to enter the land. Meanwhile the Act of July 23rd, 1866, was passed, and the defendants, under the 7th section of that act, claimed the right to purchase the land as heirs of L., and the contest thus arising was finally decided in their favor by the Land Department, and a patent issued to the defendants. *Held*, in an action to establish a constructive trust, and to compel a conveyance of a legal title, that the position of the plaintiff to the time of the eviction was that of a trespasser, and did not originate any rights which the government was bound to respect, and that after he was evicted, the premises were in the possession of defendant's ancestor, and therefore not open to settlement, and that therefore there was no valid adverse claim or title to the land, except that of the United States, and the defendants were entitled to purchase under the Act of 1866.

ID.—To create a right of pre-emption, there must be settlement, inhabitation, and improvement by the pre-emptor—conditions which cannot be met when the land is in the occupation of another; and therefore settlement upon one

piece of land can confer no rights to another adjacent to it, which at the commencement of the settlement is in the possession of others, though upon a subsequent survey by the Government it proved to be a part of the same sectional subdivision.

APPEAL from a judgment for the defendants, in the Twentieth District Court, Santa Clara County. BELDEN, J.

The facts are stated in the opinion.

*S. F. Leib*, for Appellant.

With a few exceptions (very material, however), the facts of this case are identical with the case of *Hosmer* v. *Wallace*, 47 Cal. 461. Among the exceptions are these: In that case there was no express finding that plaintiff was a *bona fide* pre-emptor. Here, there is. There, the purchaser under the grant himself applied to purchase under the Act of July 23rd, 1866 ; here, Daniel Lyons died, even before the passage of that act, and his heirs claim that they are within the terms of that act, although they admit that they did not even take by purchase, never paid a cent, never improved or cultivated the land prior to that act. Daniel Lyons died July 9th, 1866.

*Archer & Lovell*, for Respondent.

The cases of *Hosmer* v. *Wallace*, 47 Cal. 461, and *Rutledge* v. *Murphy*, 51 Cal. 388, are decisive of the pending case. The material facts of all these cases are the same, and the principle involved is the same.

The Court below did not and could not find that appellant was a *bona fide pre-emptor* as to the land in controversy. It was included within the exterior boundaries of a Mexican grant, and appellant knew it. (*Rutledge* v. *Murphy*, 51 Cal. 393, 396, 397.)

ROSS, J.:

In 1842, the Mexican Government granted to one Francisco Estrada a rancho known as the "Pastoria de las Borregas Rancho," to the extent of two square leagues, to be located within certain exterior boundaries of larger dimensions. These

exterior boundaries included the premises in controversy here. Notwithstanding that fact, the plaintiff, in October, 1856, settled upon the tract in dispute, with the intention of pre-empting it under the laws of the United States, he having at the time, and ever since, the personal qualifications necessary to enable him to pre-empt public land of the Government.

In February, 1862, the parties holding the Mexican grant, but who are not named in the record before us, recovered judgment in ejectment against the plaintiff, and under it the latter was evicted from the said premises, and never afterward re-entered. In 1863, the plaintiff moved upon what was afterwards ascertained by the public surveys of the United States to be the north-west quarter of the north-west quarter of section 1, township 7 south, range 2, west of the Mt. Diablo meridian, where he had a house and out-buildings. He also occupied about twenty acres of the north-east quarter of the said north-west quarter, making in all about sixty acres of what turned out to be, when the public surveys were made as herein after stated, the north half of the north half of section 1 aforesaid. Upon these sixty acres he has ever since resided. The other portion of the said north half, which included the premises in controversy, was then, to wit, in 1863, in the possession of one Daniel Lyons and others, to whom Estrada, the Mexican grantee, had sold it, with other land embraced within the boundaries of the grant. Lyons died on the 9th of July, 1866, leaving the defendants his heirs.

The grant was finally confirmed, and in 1865 the final survey of the tract confirmed was made and approved, which excluded from its boundaries the premises in question. The land was afterwards surveyed by the authorities of the United States, the plat duly filed, and in July, 1866, the plaintiff filed a declaratory statement in the proper land office, claiming to pre-empt the whole of the north half of the north half of said section 1, alleging his settlement thereon in October, 1856; and in September following made proof of his claim before the register and receiver, and was by them allowed to enter the land. He then paid the purchase-money, and received a certificate. In the meantime, the Act of Congress of July 23rd, 1866, was passed, and under it the defendants, as heirs of Lyons, claimed the right to purchase the premises in question.

Thereupon the register and receiver were directed by the commissioner of the general land office to investigate the entry of plaintiff; and accordingly testimony was taken before them on behalf of the respective claimants, resulting in a decision by the register and receiver in favor of the plaintiff. On appeal to the commissioner, and subsequently to the Secretary of the Interior, the decision of the register and receiver was reversed, and the land in dispute awarded to the defendants, to whom a patent was afterwards issued. The plaintiff, claiming that he has the equitable title to the land by reason of his settlement thereon in 1856, and the subsequent proceedings already mentioned, instituted the present action, by which he seeks to charge the defendants as trustees of the title for his benefit, and to compel them to transfer it to him.

The question mainly argued at the bar, and also in the brief of counsel for the plaintiff, namely, whether the *heir* of a purchaser, in good faith and for value, from a Mexican grantee is entitled to purchase from the Government the lands mentioned in the seventh section of the Act of July 23rd, 1866, need not be considered, for the reason that it is incumbent on the plaintiff to show that *he* has the equitable title to the property before he can maintain the action ; and this the record fails to establish. This is very clearly shown by the Supreme Court of the United States, in the case of *Hosmer* v. *Wallace,* 7 Otto, 579, where the Court speaks of the same settlement and the same proceedings on the part of the plaintiff as are shown in the present case. The Court there say : " The plaintiff had acquired by his settlement in 1856 no such interest in the premises as could control the disposition of them by the United States, should it be ultimately determined that they were not covered by the grant. The land within the boundaries of the grant was not open to settlement under the pre-emption laws, and his occupation from 1856 to his eviction in 1862 was that of a trespasser, and did not originate any rights which the Government was bound to respect. The land was not then ' public land,' in the sense of those laws ; and even if it had been public land, to which no private claim was made, it would not have been subject to settlement under them until it had been surveyed. The Act of Congress of March 3rd, 1853, allowing a settlement on

unsurveyed lands in California, was limited in its operation to one year. (10 Stat. 246, proviso to § 6.) By the Act of March 1st, 1854, this privilege was extended for two years from that date, when it expired. (Id. 268.) No other statute was passed opening unsurveyed lands in California to pre-emption settlement until May 30th, 1862. (12 id. 409.) The occupation, therefore, of the plaintiff in October, 1856, was a mere intrusion upon the claim of another, without any license of the Government; and after he was evicted by legal process in February, 1862, the premises were in the possession of the defendant, and therefore not open to settlement by him. Whatever right of pre-emption the plaintiff acquired by his settlement to land outside of the boundaries of the Mexican grant originated after May 30th, 1862; but as to land within those boundaries, no right could be initiated until the land was excluded from the tract confirmed by the approved survey in June, 1865. In neither case could the right of pre-emption extend to land in the occupation of the defendant at those dates. To create a right of pre-emption there must be settlement, habitation, and improvement by the pre-emptor, conditions which cannot be met when the land is in the occupation of another. Settlement, habitation, and improvement of one piece of land can confer no rights to another adjacent to it, which at the commencement of the settlement is in the possession and use of others, though upon a subsequent survey by the Government it prove to be a part of the same sectional subdivision. Under the pre-emption laws, as held in *Atherton* v. *Fowler*, 96 U. S. 513, the right to make a settlement is to be exercised on unsettled land, the right to make improvements is to be exercised on unimproved land, and the right to erect a dwelling-house is to be exercised on vacant land. None of these things can be done on land when it is occupied and used by others.

"There was, therefore, no valid adverse right or title, except that of the United States, to the premises in controversy when they were excluded by the approved survey from the tract confirmed; nor had the plaintiff the right of a pre-emption claimant to them."

Judgment affirmed.

MCKINSTRY, J., and MCKEE, J., concurred.