[No. 12027. Department Two. — December 4, 1889.]

N. BULLOCK ET AL., EXECUTORS, ETC., OF JOSEPH RUSS, DECEASED, APPELLANTS, v. JOHN W. ROUSE, RESPONDENT.

PUBLIC LANDS — SURVEY — TITLE TO STATE SCHOOL LAND — VOID PURCHASE OF UNSURVEYED LANDS — UNITED STATES HOMESTEAD ENTRY. — No title to the sixteenth and thirty-sixth sections vests in the state until fully surveyed and marked out as required by law, and one who claims a portion of a thirty-sixth section under a certificate of purchase from the state does not acquire title as against a subsequent holder under a certificate of homestead entry issued by the United States, where it appears that the east half of the section, which includes the land in controversy, had not been fully surveyed and marked out when

the state certificate of purchase was issued, though the section had been partially surveyed by the United States.

ID. — COMPLETION OF UNITED STATES SURVEY. — No survey of any portion of public land is complete until the lines and corners about that part are run and established as required by statute. The lines are created, and not merely ascertained, by the survey, and the tract has no separate legal identity until the survey is completed and approved under the authority of Congress.

ID. — ACTUAL POSSESSION — PRE-EMPTION OR HOMESTEAD ENTRY — INSUFFICIENT ACTS OF POSSESSION. — Where it appears that public land had been inclosed, but the fences were down in places, and had become somewhat dilapidated, but it does not appear how long they had been down, nor that they had been repaired, or that any herders or other means were employed to prevent the escape of stock or intrusion of other stock, no such actual possession is shown as will defeat the right of a qualified person to enter upon such land for the purpose of filing a pre-emption or homestead claim thereupon.

ID. — QUESTION OF FACT — BURDEN OF PROOF. — Whether one who claim possession of a particular piece of land has actual possession of it or not, is a question of fact, and the burden is upon him to establish the fact by competent evidence.

APPEAL from a judgment of the Superior Court of Humboldt County.

The facts are stated in the opinion.

*Chamberlin & McGowan,* for Appellants.

*Ernest Sevier,* for Respondent.

BELCHER, C. C. — This action was brought to determine an adverse claim to a piece of land described as the south half of the southeast quarter of a certain thirty-sixth section. The plaintiffs claim the land under a certificate of purchase issued by the proper officers of the state, and the defendant claims it under a certificate of homestead entry issued by the proper officers of the United States. The court below gave judgment for the defendant, and the plaintiffs appeal. The case is brought here on the judgment roll.

It appears, from the findings, that prior to the 21st of December, 1871, the greater part of the exterior lines of the township in which the land in question is situated

had been run and established by the United States, and some of the sections therein had been ascertained and established. Lines had also been run on the north, south, and west sides of section 36, and section corners had been established at the ends of each of these lines, and quarter-section corners at the middle of each one of them. But the east line of this section had not been run, and no quarter-section corner had been established upon it. And on the plat of the survey of the township filed in the local land-office the whole of the east half of section 36 was marked and returned as unsurveyed.

With the survey in this condition, one Robert Lowery made application to purchase from the state the land in controversy, and on the 21st of December, 1871, a certificate of purchase of the land, in due form, was issued to him by the state.

Subsequently one Joseph Russ, the plaintiff's testator, acquired by purchase and conveyance all the right, title, and interest of Lowery in and to the land. After his purchase, and prior to June, 1884, Russ erected a fence upon the east and west sides of the land, which, connecting with gulches and timber, served to inclose the land sufficiently to keep stock out; that is to say, the fences and natural barriers answered for all practical purposes as an inclosure.

The land was grazing land and was used by Russ for the pasturage of his stock, but in June, 1884, the fences had become somewhat dilapidated, and in places were down for a few feet. Neither Russ nor his grantor ever made any other improvements upon the land.

In June, 1884, the defendant, with notice of all the facts above stated, made a peaceable entry upon the land, and erected a dwelling-house thereon, in which he thereafter peaceably and without molestation continued to reside up to the time of the trial, asserting all the time a claim to the land by virtue of his settlement. After his entry, defendant, at his own expense, procured

the United States to complete the survey of the section by running the east line thereof, and marking the quarter corner thereon, and such survey was duly approved by the United States surveyor-general for California, and the plat thereof was filed in the local land-office on the 19th of February, 1885.

On the 3d of March, 1885, the defendant, then possessing all the qualifications necessary to entitle him to enter land as a homestead under the laws of the United States, filed in the land-office his application in due form to enter the land in controversy as a homestead.

Upon these facts two questions arise: 1. Was the survey made prior to the issuance of the certificate of purchase to Lowery by the state sufficient to vest the title to the land in the state as a portion of a thirty-sixth section?

2. Was the inclosure and possession of Russ, at the time of defendant's entry, sufficient to bring the case within the rule declared in *Atherton* v. *Fowler*, 96 U. S. 513, *Davis* v. *Scott*, 56 Cal, 165, and other cases following in the same line?

1. Whatever title the state has to the sixteenth and thirty-sixth sections is acquired under and by operation of the act of Congress approved March 3, 1853, and entitled "An act to provide for the survey of the public lands in California, the granting of pre-emption rights therein, and for other purposes." (10 U. S. Stats. 244.) The seventh section of this act provides: "That when any settlement, by the erection of a dwelling-house, or the cultivation of any portion of the land, shall be made upon the sixteenth or thirty-sixth sections before the same shall be surveyed, or when such sections may be reserved for public uses, or taken by private claims, other land shall be selected by the proper authorities of the state in lieu thereof."

Under this provision it has been held by the supreme court of the United States " that whenever, at the time

these sections are ascertained by the government survey, there is either a dwelling-house or the cultivation of any portion of the land on which some one is residing and asserting claim to it, the title of the state does not vest, but the alternative right to other land as indemnity does." (*Mining Co.* v. *Con. Mining Co.*, 102 U. S. 175.)

It has also been said by the supreme court of this state: "It may be admitted that by virtue of the act of Congress of 1853 the state became entitled to an amount of land equal to two sections in each congressional township, yet as the state did not, by virtue of that act, acquire the title to any specified tract of land, and could not acquire it until the survey had been made under the authority of Congress, it necessarily follows that prior to such survey she had no power or authority to confer upon a purchaser from her any right, title, or interest in any specified parcel of such lands." (*Grogan* v. *Knight*, 27 Cal. 522.)

The government survey of the public lands is made by running and marking the lines of the townships and sections, and by marking the corners of the townships, sections, and quarter-sections. (Rev. Stats., secs. 2395 et seq.)

It is not necessary that a whole township be surveyed at one time, and often different parts of a township are surveyed at different times. But no survey of any part is complete until the lines and corners about that part are run and established as required by the statute. "Even after a principal meridian and a base line have been established, and the exterior lines of the township have been surveyed, neither the sections nor their subdivisions can be said to have any existence until the township is subdivided into sections and quarter-sections by an approved survey. The lines are not ascertained by the survey, but they are created." (*Robinson* v. *Forrest*, 29 Cal. 325.) "There is, in fact, no such tract of land as that described in the petition until it

has been located within the congressional township, by
an actual survey and establishment of the lines, under
the authority of the United States, and the survey has
been approved by the proper United States surveyor-
general. A person may approximate to the lines that
may be run, — may surmise the precise lines, — but the
tract has no separate legal identity until the survey is
made and approved under the authority of Congress."
(*Middleton* v. *Low,* 30 Cal. 605.)

When Lowery obtained his certificate of purchase, the
east half of the section had not been fully surveyed and
marked out as required by law. And it was returned
by the surveyor-general, and shown on the map of the
township filed in the land-office, as unsurveyed land.
Under these circumstances, and in the light of the au-
thorities above cited, we think it must be held that the
title to the land in controversy had not vested in the state.

2. It is settled law that when one person is in the
actual possession of a parcel of public land, another per-
son cannot forcibly or surreptitiously intrude upon his
possession, and thereby acquire a right to the land
by filing thereon a pre-emption or homestead claim.
(*Atherton* v. *Fowler,* 96 U. S. 513; *Hosmer* v. *Wallace,* 97
U. S. 575; *Trenouth* v. *San Francisco,* 100 U. S. 251;
*Mower* v. *Fletcher,* 116 U. S. 381; *Davis* v. *Scott,* 56 Cal.
165; *Hosmer* v. *Duggan,* 56 Cal. 257; *McBrown* v. *Morris,*
59 Cal. 64; *Goodwin* v. *McCabe,* 75 Cal. 584.)

It is also settled that fences and natural barriers may
constitute a sufficient inclosure to give actual possession
of land. (*Brumagim* v. *Bradshaw,* 39 Cal. 25; *Southmayd*
v. *Henley,* 45 Cal. 101; *Conroy* v. *Duane,* 45 Cal. 603.)

And one who uses land for the pasturage of stock
may have actual possession thereof without any inclos-
ure, if he employs herders to keep his own stock on the
land and other stock off. (*Goodrich* v. *Van Landingham,*
46 Cal. 603; *Sheldon* v. *Mull,* 67 Cal. 301; *Webber* v.
*Clarke,* 74 Cal. 11.)

But whether one who claims possession of a particular piece of land has actual possession of it or not is a question of fact, and the burden is upon him to establish the fact by competent evidence.

It was found by the court below that the land involved in this case had been inclosed by Russ, but the fences had become somewhat dilapidated and were down in places when defendant entered. It does not appear how long the fences had been down, nor that anything had been done to repair them. Nor does it appear that any herders or other means were employed by Russ to prevent the escape of his stock or the intrusion of other stock.

This being the condition of things when the defendant entered and erected his dwelling-house on the land, the court held that his entry was not unlawful or in contravention of the rule declared in the above-cited cases. This conclusion seems to us correct; for while the fences were down they did not constitute an inclosure, and could not show actual possession.

We therefore advise that the judgment be affirmed.

VANCLIEF, C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.