I concur. The plaintiff obtained judgment in the court below, upon the pleadings. This judgment must, of course, be reversed, if the complaint does not state facts sufficient to support it, or if the answer presents any defense to the action. We are, therefore, confined, upon this appeal, to a consideration of the pleadings.
1. Included in the property assessed to the defendant, is the possessory claim to certain unsurveyed lands, which are not described further, than that they will, when the United States surveys are extended over them, be designated as certain congressional subdivisions. A possessory claim to land is to be assessed as real estate, and Gen. Stat. Sec. 1088, requires that it shall be described by metes and bounds, or by common designation or name. If not so described, the assessment is void. (People v. Mahoney,55 Cal. 286; Keane v. Cannovan, 21 Id. 302.)
The description here, does not comply with this statute. The statement that laud will, some time in the future, be designated as a certain section, does not sufficiently describe it for the purposes of taxation. It does not show its present location, nor identify it as it now exists. And further, we know that it is impossible to tell, in advance of the official surveys, how any particular piece of land will, finally, be designated. Says the court, inRobinson v. Forrest, 29 Cal. 325: "Neither a private survey nor one made under the authority of the state, will answer this purpose." And again: "The lines are not ascertained by *Page 102 
the survey, but they are created, and although a surveyor may, in advance of the making of the subdivision of the township, by the deputy of the United States surveyor general, run lines with the greatest practicable exactness from the corners established on the exterior lines of the township, to ascertain the bounds of any given quarter-quarter section, still, when the survey comes to be made under the direction of the surveyor general, the difference between the two surveys may be such that the forty-acre lot, which, under the private, and theoretically the more accurate survey, appeared to fall within the lands listed to the state, will be excluded from the list, orvice versa."
In Middleton v. Low, 30 Cal. 605, it is again said: "There is, in fact, no such tract of land as that described in the petition, until it has been located within the congressional township by an actual survey and establishment of the lines, under the authority of the United States, and the survey has been approved by the proper United States surveyor general." (See, also,Bullock v. Rouse, 81 Cal. 590; S. C. 22 Pac. Rep. 919.) It follows that the complaint does not state facts sufficient to support the judgment, as to the taxes upon the land.
2. This is sufficient to dispose of the appeal, but as there are other important questions in the case which have been fully argued, are fairly raised, and are likely to arise again, it is proper to consider them.
The motion to strike out the amendment to the answer, upon the ground that it was filed without leave, should be denied, because not made in the court below, where, had it been sustained, the proper leave to file it might have been obtained. (Clarke v. Lyon Co., 7 Nev. 76;Longabaugh v. Railroad Co., 9 Nev. 271.)
3. It is claimed that the answer is insufficient, because it does not deny "all claim, title, or interest in the property assessed, at the time of the assessment," in the language of section 1108, Gen. Stat. It seems to me, however, that, taken altogether, it states a good defense. An attempt was made to assess a possessory claim to lands which, it was alleged, would some time be designated as certain odd sections, and which, we know, had been granted to the defendant, by the United States. It could not, truthfully, deny all claim to the land, but it denied any possessory claim thereto, and stated facts showing that the right which it did have, was not subject to taxation. *Page 103 
This must be held sufficient, or else under the guise of regulating the pleadings, a party may be debarred from stating facts which constitute a complete defense to an action, simply because the truth will not permit him to state them in a particular form of words. This cannot be done. (Wright v. Cradletaugh, 3 Nev. 349;Bronson v. Kinzie, 1 How. 628;Green v. Biddle, 8 Wheat. 1.)
4. Under the facts stated in the answer, the defendant had no taxable interest in the land, nor was it subject to state taxation.
(a) It is therein alleged that the lands are unsurveyed; that the defendant has no possessory claim to them; and that the only claim it has, is under the land grant acts of congress, of July 1, 1862, and July 2, 1864. Several attempts have been made to tax some of the lands granted by these acts, after they were surveyed, but it was finally settled that this was not permissible before patents had issued, upon the ground that congress bad made the payment of the cost of surveying a condition of the grant, and that, until the patents issued, the government held a lien thereon as security therefor, which exempted them from state taxation. (Railroad Co. v. TraillCo., 115 U. S. 607.) By the act of July 10, 1886, congress, however, authorized such taxation, notwithstanding this lien, (State v. Railroad Co.,20 Nev. 373;) but it was specially provided that this authorization should not apply to lands unsurveyed. (U. S. Sat. at Large, 1886, p. 143.) So, if the government ever had a lien upon those unsurveyed — if the payment of these costs was ever a condition precedent to the passage of the title, it still exists, and they are consequently exempt from state taxation. It is argued, however, that there can be no cost of surveying, and consequently no lien, until the surveys are made. This is ingenious, but I think not tenable. The most of the land was unsurveyed at the time of the grant, and it was certain that some time the United States would have to incur the expense of segregating it from the mass of the public domain. The language of the act is, that none of the lands granted shall be conveyed until after the cost of surveying is paid. This has been construed, so far as surveyed lands are concerned, to mean that thereby congress intended to attach a condition to the grant — to hold a lien on the land for such costs. If so, why does it not also mean that it intended to attach the same *Page 104 
condition — to hold the same lien upon unsurveyed lands — for the cost that must certainly some time accrue? Congress could attach any condition to the grant that it saw fit. Until surveyed, and its character andstatus determined, no patents could be issued. When this was done, then the cost would be incurred, and it seems clear that the land was to be all the time holden for it; as well before, as after surveys.
(b) Upon another ground, unsurveyed lands are not subject to state taxation, although granted inprœsenti, where surveys are necessary to the issuance of the patents. Lands for which no patent has issued, are sometimes subject to such taxation, but it is only under peculiar circumstances, which are quite clearly stated in Railroad Co. v. Price Co.,133 U. S. 505. It is there said:
"It follows that all the public domain of the United States within the state of Wisconsin was, in 1883, exempt from state taxation. Usually the possession of the legal title by the government determines both the fact and the right of ownership. There is, however, an exception to this doctrine with respect to the public domain, which is as well settled as the doctrine itself, and that is, that where congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that upon the performance of the conditions a patent of the United States shall issue to the donee or purchaser, and all conditions are complied with, the land alienated being distinctly defined, it only remaining for the government to issue its patent, and until such issue holding the legal title in trust for him, who, in the mean time is not excluded from the use of the property — in other words, when the government has ceased to hold any such right or interest in the property as to justify it in withholding a patent from the donee or purchaser, and it does not exclude him from the use of the property — then the donee or purchaser will be treated as the beneficial owner of the land, and the same be held subject to taxation as his property."
In several respects the case at bar does not come within the rules here laid down. The donee is not entitled to the patent until the land is surveyed, and the fact also ascertained in some manner, that it is not within some of the excepted tracts, that are not included in the grant. This, certainly, cannot be done until its boundaries are clearly defined. *Page 105 
Again, under the act of congress, entitled "An act to prevent the unlawful occupancy of public lands," approved February 25, 1885, it seems that the donee is also excluded from the beneficial use or possession of unsurveyed land, because, until surveyed, it is all a part of the public domain, and the defendant, no more than any one else, has any right to the possession of any particular tract or portion of it.
5. Tender. The complaint describes the property assessed in nine different subdivisions, and then alleges that certain taxes were levied upon the whole thereof. It is in the statutory form and is not required to state the details of the assessment. It, consequently, does not follow from this, either that the property was, or was not, assessed in such subdivisions. But it was the assessor's duty to enter it upon the assessment roll, in at least that number of parcels, and value each division separately. In the absence of allegation or proof to the contrary, we must presume that he did his duty. (Lawson Pres. Ev. 53.)
It has been decided that adjoining town lots, owned by the same person, may be assessed as one tract, but never under any statute similar to ours, that entirely separate and distinct pieces of real estate and personalty, can be thrown together in one general statement and valued as one piece of property. Such an assessment is void. (Cooley, Tax'n, 279;People v. Hollister, 47 Cal. 408.)
The answer alleges, that prior to the time the taxes became delinquent, the defendant unconditionally tendered to the tax receiver of Lander county, all the taxes due upon a number of these subdivisions, or parcels of property, amounting, in all, to fifteen thousand six hundred and forty-five dollars and sixty-six cents; that he refused to receive it, but subsequently to the commencement of this action, it was demanded by the district attorney, and paid to the county The court held the plea of tender insufficient, and gave judgment for the full amount of tax and penalties, less the sum paid. The question is: can a taxpayer pay the taxes upon some subdivisions of his property, and not on all? It may be admitted, that, except under statutory authority, he cannot. Several apparently conflicting provisions of our statutes can be cited, which seem to indicate that the legislature did not understand it had authorized it. And yet, the language of Gen. Stat. Sec. 1096, "but no tax receiver shall receive any taxes for any portion less than the least *Page 106 
subdivision entered upon the assessment roll," seems to clearly answer the question in the affirmative. If he is not to receive the tax on anything less than the least subdivision, then certainly the manifest implication is, that he can receive it on anything more than that. Words of a statute are never to be construed as unmeaning, if it is possible to avoid it; but if the tax receiver must not receive the tax on anything less than the whole property, then certainly it is meaningless to forbid him receiving it on less than a subdivision. As the defendant tendered the taxes on what was certainly a subdivision of its property, it is unnecessary to consider whether anything less would also have been a subdivision — for instance, whether it could pay on each forty acres of its lands, and demand a receipt therefor.
It is argued that it is a matter of discretion with the tax receiver, whether he will receive the taxes so tendered or not. But this cannot be. Where a public officer has been clothed by statute, with power to do an act which concerns the rights of third persons, the execution of the power may be insisted on, though the phraseology of the statute be permissive merely, and not peremptory. (Mayor v. Furze, 3 Hill, 614.)
Nor was the amendment to section 1111, Gen. Stat., made a year later, a repeal of this provision, because — First, there is no necessary conflict between them; and secondly, so far as any bearing upon this question is concerned, the amendment was simply a re-enactment of the section as it originally stood. It cannot be supposed that the legislature, in one section of a statute, intended to repeal another section of the same act.
6. The question of removal to the United States circuit court, seems to have been virtually abandoned by the appellant upon the argument, and therefore requires no particular consideration. *Page 107