[No. 1331.]

THE STATE OF NEVADA, RESPONDENT, v. THE CENTRAL
    PACIFIC RAILROAD COMPANY, APPELLANT.

TAXATION—UNSURVEYED PUBLIC LANDS.—Unsurveyed public lands ac-
    quired by the appellant under the acts of congress of July 1, 1862, and
    July 2, 1864, are exempted from taxation by the state.

IDEM—DESCRIPTION OF UNSURVEYED LANDS.—A description of unsur-
    veyed lands as certain odd numbered sections "as their designation
    will appear when the surveys of the government are extended over
    them" is insufficient for their identification for taxation and is not
    such a description as is required by the revenue laws of Nevada.
    This principle applies equally when it is only the possessory claim
    to the land that is assessed.

IDEM—TAXES UPON SUBDIVISIONS.—The law permits and the taxpayer
    has a right to pay the tax on subdivisions of his property without
    paying the taxes upon his entire property.

IDEM—SUFFICIENCY OF ANSWER.—In an action to recover delinquent
    taxes and penalties an answer denying a possessory claim to the
    lands and stating facts showing that the rights claimed are untax-
    able, presents a good defense, although it does not deny all claim,
    title or interest in the property assessed. (Concurring opinion of
    Bigelow, J.)

IDEM—TENDER—DUTY OF TAX RECEIVER.—It is the duty of the tax re-
    ceiver to receive the full taxes on the least subdivisions entered on
    the assessment roll, when properly tendered, and to give his receipt
    therefor. When a public officer has been clothed by statute with
    power to do an act which concerns the rights of third persons, the
    execution of the power may be insisted on, though the phraseology
    of the statute be permissive merely, and not peremptory. (Concur-
    ring opinion of Bigelow, J.)

APPEAL from the District Court of the State of Nevada, Lander
county.

A. L. Fitzgerald, District Judge.

The facts sufficiently appear in the opinion.

Baker & Wines, for Appellant.

I.   The court erred in ordering judgment for respondent for
the whole amount of the tax together with all of the statutory
penalties added thereto. The taxes alleged to be due from
appellant upon all of the property assessed, except upon the
lands described upon the assessment roll, were all uncondition-
ally tendered prior to the time when penalties could have been

added, and were subsequently paid upon written demand of the tax collector. A tender, if kept good, and if in all respects sufficient, is the same as payment, and relieves a party making such tender from the payment of interest or penalties upon the amount tendered. (*Shields* v. *Lozear*, 22 N. J. Eq. 447.) A tender, so far as the computation of interest is concerned, must be considered as payment. The same must be true as to statutory penalties for alleged non-payment of taxes. (*Hidden* v. *Jordan*, 39 Cal. 61.) A tender will defeat a lien. (*Tiffany* v. *St. John*, 65 N. Y. 314; *Green* v. *Fry*, 93 N. Y. 353.)

II.   Prior to July 10, 1886, the supreme court of the United States had several times decided that lands embraced in the grants to the Pacific railroads were not taxable by the state authorities until the costs of making the surveys had been paid by the railroad company. (*R. R. Co.* v. *McShane*, 22 Wallace, 444; *R. R. Co.* v. *Trail County*, 115 U. S. 600.) The act of congress of July 10, 1886, in terms does not apply to lands unsurveyed. A want of power to tax unsurveyed lands still exists. The lands cannot be identified, and the government grant does not attach until such lands are identified. The purpose of congress was, no doubt, to preserve the subject matter subject to the lien of the government. Therefore, we insist that these lands are not taxable. There cannot be a legal identification until the lines dividing the even from the odd numbered sections are run. (*Bullock* v. *Rouse*, 81 Cal. 590; *United States* v. *Curtner*, 38 Fed. 1 and 9; *Whitney* v. *Gunderson*, 31 Wis. 359, 380, 381, 382.)

III.   Every character of possession mentioned in the statute as being the subject of taxation, must be an actual possession, and not the constructive possession, which follows the legal title. A constructive possession is not the subject of taxation. To tax that is simply to tax the title. A constructive possession can not exist in the absence of title. (*Hersee* v. *Porter*, 100 N. Y. 403; *Hale & Norcross G. & S. M. Co.* v. *Storey Co.*, 1 Nev. 104; *State* v. *Moore*, 12 Cal. 56; *People* v. *Shearer*, 30 Cal. 645; *People* v. *Frisbie*, 31 Cal. 146; *People* v. *Cohen*, 31 Cal. 210; *People* v. *Crockett*, 33 Cal. 150; *People* v. *Castro*, 39 Cal. 65, 69; *Riley* v. *Lancaster*, 39 Cal. 354; *People* v. *Black Diamond*, 37 Cal. 54; *Barrett* v. *Amerein*, 36 Cal. 322.)

IV.   It was a palpable error for the court to deny the application of appellant to remove the cause to the circuit court. If

the title, or that which depends upon title, is sought to be taxed, the power to do so depends upon a construction of the acts of congress, before cited; and which clearly involves a federal question. (Speer on Removal, pp. 28–30; Dillon on Removal, p. 91, Sec. 76; *R. R. Co.* v. *Mississippi*, 102 U. S. 135; *Starin* v. *New York*, 115 U. S. 248; *Germany I. Co.* v. *Wisconsin*, 119 U. S. 473.)

*J. F. Alexander*, Attorney General, *W. D. Jones*, District Attorney of Lander county, and *Henry Mayenbaum*, for Respondent.

I.   The amendment to the answer cannot be considered. It is no part of the judgment roll. It was filed without leave of court, without motion or notice and without complying with rule 17 of the district court. (*Winter* v. *Winter*, 8 Nev. 134; *Smith* v. *Yreka Water Co.*, 14 Cal. 201; *Haydon* v. *Haydon*, 46 Cal. 337; *Harney* v. *Corcoran*, 60 Cal. 317; *Martin* v. *Thompson*, 62 Cal. 619; 3 Estee's Plead. 4447–4452.)

II.   The court minutes cannot be brought here except by statement. (*Corbett* v. *Job*, 5 Nev. 205; *Imperial* v. *Barstow*, 5 Nev. 253–254; *Caldwell* v. *Greely*, 5 Nev. 262; *Irwin* v. *Samson*, 10 Nev. 282; *Simpson* v. *Ogg*, 18 Nev. 28.)

III.   There is no federal question in the case. (*Murdock* v. *Memphis City*, 20 Wall. 638; *Insurance Co.* v. *Henderson*, 92 U. S. 286; *Theurkauf* v. *Ireland*, 11 Saw. 514; *Dowel* v. *Griswold*, 5 Saw. 39; *Carson* v. *Dunham*, 121 U. S. 422–429; *Gold Washing Co.* v. *Keyes*, 96 U. S. 199; *Berger* v. *Douglas County*, 5 Fed. 23; *Davenport N. Bank* v. *Mittelbuscher*, 15 Fed. 225; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Memphis Gas Co.* v. *Shelby Co.*, 109 U. S. 398; *Manhatten R. Co.* v. *New York*, 18 Fed. 195; *Starin* v. *New York*, 115 U. S. 248; *Romie* v. *Casanova*, 91 U. S. 379; *McStay* v. *Friedman*, 92 U. S. 723; *Traflon* v. *Nougues*, 4 Saw. 180; *Hoadley* v. *San Francisco*, 94 U. S. 4; *Austin* v. *Gagan*, 39 Fed. 626; *San Francisco* v. *Itsel*, U. S. S. C. 1889, 33 L. R. 570; *Beatty* v. *Benton*, U. S. S. C., 10 S. C. Rep. 747.)

IV.   This action is a case arising under the revenue laws of this state, and it does not matter whether defendant has title. The assessment is under our statute requiring the assessment of possessory claims to lands and the state has power to tax such possessory claims. (Gen. Stat. of Nev. 1080, 1081 and 1088;

*People* v. *Shearer*, 30 Cal. 645; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *People* v. *Cohen*, 31 Cal. 210; *Gold Washing Co.* v. *Keyes*, 96 U. S. 199; *People* v. *B. D. C. M. Co.*, 37 Cal. 54; *Memphis Gas Co.* v. *Shelby Co.*, 109 U. S. 398; *Berger* v. *Douglas Co.*, 5 Fed. 23; *People* v. *Crockett*, 33 Cal. 150; *Davenport N. Bank* v. *Mittelbuscher*, 15 Fed. 225; *Wright* v. *Cradlebough*, 3 Nev. 346.)

V. The description of the lands in the complaint is sufficient. (Gen. Stat. 1088; *People* v. *Crockett*, 33 Cal. 150; *High* v. *Shoemaker*, 22 Cal. 363; *Bosworth* v. *Danzien*, 25 Cal. 296; *Wright* v. *Roseberry*, 121 U. S. 501; *State* v. *C. P. R. R. Co.*, 10 Nev. 48, 62; *State* v. *C. P. R. R. Co.*, 22 Pac. Rep. 339.)

VI. The answer of defendant, and the amendment to the answer, are not sufficient to raise an issue under 1108 Gen. Stat. There is no denial of "all claim, title or interest in the property assessed." (*State* v. *C. P. R. R. Co.*, 9 Nev. 87-90; *State* v. *Tel. Co.*, 4 Nev. 345-6; *People* v. *Pearis*, 37 Cal. 259; *People* v. *Frisbie*, 31 Cal. 146; *State* v. *C. P. R. R. Co.*, 22 Pac. Rep. 240; *Robinson* v. *Gaar*, 6 Cal. 273; *State* v. *Sadler*, 23 Pac. Rep. 799.)

VII. The tender was only on part of the property assessed against the company and is not good, therefore the penalties attached. The whole of the taxes must be tendered. The action for taxes on all of the property assessed against an individual is entire and the whole tax must be paid or tendered. (*State* v. *Cal. M. Co.*, 13 Nev. 293; *State* v. *Yellow Jacket*, 14 Nev. 247; *State* v. *Carson Sav. Bank*, 17 Nev. 147, 165; *State* v. *C. P. R. R. Co.*, 9 Nev. 87, 90; *Wells, Fargo & Co.* v. *Dayton*, 11 Nev. 162; 2 Desty's Taxation, 815, 722; Cooley's Taxation, 323.)

VIII. The statute provides that "no ex-officio tax receiver shall receive any taxes for any portion less than the least subdivision entered upon the assessment roll." This implies that the treasurer may demand all. (Endl Interp. of Stat. p. 557, n.; *Hankins* v. *People*, 106 Ill. 628; *Drake* v. *State*, 5 Tex. App. 649; *Chiles* v. *State*, 2 Tex. App. 36.)

IX. Every mile of its road and every acre of its lands is separately liable for all of the taxes assessed against the company. (1 Blackwell's Tax Titles, S. 479; Cooley's Taxation, 323; 2 Desty's Taxation, 815; *Drigger* v. *Cassady*, 71 Ala. 529; *Rinard* v. *Nordyke*, 76 Ind. 130; *Mesker* v. *Koch*, 76 Ind. 68; *Ludlow* v. *Ludlow*, 109 Ind. 199; *Cave* v. *Houston*, 65 Tex. 619; *Yuba* v. *Adams*, 7 Cal. 36; *Cowell* v. *Washburn*, 22 Cal. 522;

*Reeve* v. *Kennedy*, 43 Cal. 653; *Trust Co.* v. *Young*, 39 N. W. Rep. 116; *State* v. *C. P. R. R. Co.*, 9 Nev. 87.)

By the Court, BELKNAP, C. J.:

This is an action for the recovery of delinquent taxes assessed against the real and personal property of the defendant situated in Lander county. Included in the list of assessed property is a large quantity of unsurveyed land. The principal question in the case is whether land of this character is taxable or not. These lands were acquired by the railroad company under acts of congress of July 1, 1862, and July 2, 1864. The act of July 2, 1864, provides as follows : "Sec. 21. That before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same, by the said company or party in interest as the title shall be required by said company, which amount shall, without any furtner appropriation, stand to the credit of the proper account, to be used by the commissioner of the general land office for the prosecution of the survey of the public lands along the line of railroad, and so from year to year, until the whole shall be completed, as provided under the provisions of this act." (13 U. S. Stat. at Large, 365.)

In the case of *Railway Co.* v. *McShane*, 22 Wall, 462, the court, in considering this provision, said : "That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done, without which the company is not entitled to a patent. The case, clearly, is not within the rule which authorizes state taxation of lands, the title of which is in the United States.

The reason of this rule is also fully applicable to this case. The United States retains the legal title by withholding the patent, for the purpose of securing the payment of these expenses, and it can not be permitted to the states to defeat or embarrass this right by a sale of the lands for taxes. If such a sale could be made, it must be valid if the land is subject to taxation, and the title would pass to the purchaser. If no such title

could pass, then it is because the land is not liable to the tax; and the treasurers of the counties have no right to assess it for that purpose.

But when the United States parts with her title, she has parted with the only means which that section of the statute gives for securing the payment of these costs. It is by retaining the title that the payment of costs of survey is to be enforced. And, so far as the right of the state to tax the land is concerned, we are of opinion that, where the original grant has been perfected by the issuance of the patent, the right of the state to tax, like the right of the company to sell, the lands, has become perfect."

Again, in the case of *Railroad Co.* v. *Traill Co.*, 115 U. S. 607, these principles were reaffirmed. Said the court: "In the case of *Railway Co.* v. *Prescott*, which was a writ of error to the supreme court of Kansas, this court held these lands could not be assessed and sold for taxes under state laws until this cost of surveying them was paid to the United States, because the government retained the legal title to the same to compel this payment. This case was decided in 1872. In 1874, the case of *Railway Co.* v. *McShane* came before us, involving the same question, and because it also involved some other points decided in *Railway Co.* v. *Prescott*, which the court reconsidered and overruled, it necessarily received full consideration, the result of which was to reaffirm the proposition that, until the United States was reimbursed for the expenses of the survey of those lands, they were not subject to state taxation."

Advantage was taken of this interpretation of the law to escape taxation by neglecting to pay the costs of surveys. To obviate the difficulty, congress enacted "that no lands granted to any railroad corporation by any act of congress shall be exempt from taxation by states, territories and municipal corporations, on account of the lien of the United States upon the same for the costs of surveying, selecting and conveying the same, or because no patent has been issued therefor; but this provision shall not apply to lands unsurveyed." (U. S. Stat. at Large, 1886, p. 143.)

This is the only enactment of congress waiving the lien of the government upon railroad lands for the purpose of state taxation. A reason for withholding the right to tax unsurveyed lands may be found in the fact that it is impracticable to assess them. It is a well-established principle of law that land as-

sessed for the purpose of taxation must be so described that it may be identified. The purposes of this requirement, as stated by Judge Cooley, are: " *First*, that the owner may have information of the claim made upon him or his property; *second*, that the public, in case the tax is not paid, may be notified what land is to be offered for sale for the non-payment; and, *third*, that the purchaser may be enabled to obtain a sufficient conveyance." (Cooley, Tax'n. 284.)

The lands granted to the railroad company were the odd-numbered sections within the limits of twenty miles on each side of the railroad, except such as had been sold or otherwise disposed of by the United States, or to which a homestead or pre-emption claim had attached, or mineral lands. Until the surveys are made it cannot be known what parts of the lands are within the enumerated exceptions, nor what sections or parts of sections will belong to the company, nor until then, can the locality of the lands be determined so that a description may identify them. The exemption enforces the principle that lands may not be assessed for taxation unless described so that they may be found. It is said, however, that the possessory interest of the defendant is taxable under the revenue laws of the state, independently of the land itself, or the title to it. It must be borne in mind that the unsurveyed lands are not described by metes and bounds, or by common designation or name, but as sections and parts of sections, and, as alleged by the complaint, " as their designation will appear when the surveys of the United States are extended over them."

It is plain that this is not a description by which the identity of the lands can be established, and it is equally plain that possession of lands so described cannot be established until the surveys are made. The reasons suggested as having induced congress to exempt unsurveyed lands from taxation will exclude a possessory interest in such lands from taxation when described only " as their designation will appear when the surveys of the government are extended over them."

The answer of defendant alleges tender and payment of the tax imposed upon all of the assessed property described in the complaint other than lands. Defendant had the right, under the statute (Gen. Stat. Sec. 1096) to pay the taxes upon any sub-division of its property entered upon the assessment roll. And no judgment for taxes or penalties should be entered against

defendant by reason of its ownership of property, the taxes upon which have been paid in conformity with this provision of the statute.

A motion has been made in this court to amend the record by striking out a pleading entitled "Amendment to Answer." The motion is denied upon the authority of the following cases: *Satterlee* v. *Bliss,* 36 Cal. 521; *People* v. *Romero,* 18 Cal. 93; *Boston* v. *Haynes,* 31 Cal. 107; *Bonds* v. *Hickman,* 29 Cal. 464; *Boyd* v. *Burrel,* 60 Cal. 280. A similar answer was considered insufficient in the case of *People* v. *Pearis;* 37 Cal. 259. It is unnecessary for us, however, to rule upon the point, as the complaint states the facts upon which our decision is based.

Judgment reversed, and cause remanded.


Bigelow, J., concurring.


I concur. The plaintiff obtained judgment in the court below, upon the pleadings. This judgment must, of course, be reversed, if the complaint does not state facts sufficient to support it, or if the answer presents any defense to the action. We are, therefore, confined, upon this appeal, to a consideration of the pleadings.

1. Included in the property assessed to the defendant, is the possessory claim to certain unsurveyed lands, which are not described further, than that they will, when the United States surveys are extended over them, be designated as certain congressional subdivisions. A possessory claim to land is to be assessed as real estate, and Gen. Stat. Sec. 1088, requires that it shall be described by metes and bounds, or by common designation or name. If not so described, the assessment is void. (*People* v. *Mahoney,* 55 Cal. 286; *Keane* v. *Cannovan,* 21 Id. 302.)

The description here, does not comply with this statute. The statement that land will, some time in the future, be designated as a certain section, does not sufficiently describe it for the purposes of taxation. It does not show its present location, nor identify it as it now exists. And further, we know that it is impossible to tell, in advance of the official surveys, how any particular piece of land will, finally, be designated. Says the court, in *Robinson* v. *Forrest,* 29 Cal. 325: "Neither a private survey nor one made under the authority of the state, will answer this purpose." And again: "The lines are not ascertained by

the survey, but they are created, and although a surveyor may, in advance of the making of the subdivision of the township, by the deputy of the United States surveyor general, run lines with the greatest practicable exactness from the corners established on the exterior lines of the township, to ascertain the bounds of any given quarter-quarter section, still, when the survey comes to be made under the direction of the surveyor general, the difference between the two surveys may be such that the forty-acre lot, which, under the private, and theoretically the more accurate survey, appeared to fall within the lands listed to the state, will be excluded from the list, or *vice versa.*"

In *Middleton* v. *Low*, 30 Cal. 605, it is again said: "There is, in fact, no such tract of land as that described in the petition, until it has been located within the congressional township by an actual survey and establishment of the lines, under the authority of the United States, and the survey has been approved by the proper United States surveyor general." (See, also, *Bullock* v. *Rouse*, 81 Cal. 590; S. C. 22 Pac. Rep. 919.) It follows that the complaint does not state facts sufficient to support the judgment, as to the taxes upon the land.

2.   This is sufficient to dispose of the appeal, but as there are other important questions in the case which have been fully argued, are fairly raised, and are likely to arise again, it is proper to consider them.

The motion to strike out the amendment to the answer, upon the ground that it was filed without leave, should be denied, because not made in the court below, where, had it been sustained, the proper leave to file it might have been obtained. (*Clarke* v. *Lyon Co.*, 7 Nev. 76; *Longabaugh* v. *Railroad Co.*, 9 Nev. 271.)

3.   It is claimed that the answer is insufficient, because it does not deny "all claim, title, or interest in the property assessed, at the time of the assessment," in the language of section 1108, Gen. Stat. It seems to me, however, that, taken altogether, it states a good defense. An attempt was made to assess a possessory claim to lands which, it was alleged, would some time be designated as certain odd sections, and which, we know, had been granted to the defendant, by the United States. It could not, truthfully, deny *all* claim to the land, but it denied any possessory claim thereto, and stated facts showing that the right which it did have, was not subject to taxation.

This must be held sufficient, or else under the guise of regulating the pleadings, a party may be debarred from stating facts which constitute a complete defense to an action, simply because the truth will not permit him to state them in a particular form of words. This cannot be done. (*Wright* v. *Cradlebaugh*, 3 Nev. 349; *Bronson* v. *Kinzie*, 1 How. 628; *Green* v. *Biddle*, 8 Wheat. 1.)

4. Under the facts stated in the answer, the defendant had no taxable interest in the land, nor was it subject to state taxation.

(*a*) It is therein alleged that the lands are unsurveyed; that the defendant has no possessory claim to them; and that the only claim it has, is under the land grant acts of congress, of July 1, 1862, and July 2, 1864. Several attempts have been made to tax some of the lands granted by these acts, after they were surveyed, but it was finally settled that this was not permissible before patents had issued, upon the ground that congress had made the payment of the cost of surveying a condition of the grant, and that, until the patents issued, the government held a lien thereon as security therefor, which exempted them from state taxation. (*Railroad Co.* v. *Traill Co.*, 115 U. S. 607.) By the act of July 10, 1886, congress, however, authorized such taxation, notwithstanding this lien, (*State* v. *Railroad Co.*, 20 Nev. 373;) but it was specially provided that this authorization should not apply to lands unsurveyed. (U. S. Sat. at Large, 1886, p. 143.) So, if the government ever had a lien upon those unsurveyed—if the payment of these costs was ever a condition precedent to the passage of the title, it still exists, and they are consequently exempt from state taxation. It is argued, however, that there can be no cost of surveying, and consequently no lien, until the surveys are made. This is ingenious, but I think not tenable. The most of the land was unsurveyed at the time of the grant, and it was certain that some time the United States would have to incur the expense of segregating it from the mass of the public domain. The language of the act is, that none of the lands granted shall be conveyed until after the cost of surveying is paid. This has been construed, so far as surveyed lands are concerned, to mean that thereby congress intended to attach a condition to the grant—to hold a lien on the land for such costs. If so, why does it not also mean that it intended to attach the same

condition—to hold the same lien upon unsurveyed lands—for the cost that must certainly some time accrue? Congress could attach any condition to the grant that it saw fit. Until surveyed, and its character and *status* determined, no patents could be issued. When this was done, then the cost would be incurred, and it seems clear that the land was to be all the time holden for it; as well before, as after surveys.

(b) Upon another ground, unsurveyed lands are not subject to state taxation, although granted *in præsenti,* where surveys are necessary to the issuance of the patents. Lands for which no patent has issued, are sometimes subject to such taxation, but it is only under peculiar circumstances, which are quite clearly stated in *Railroad Co.* v. *Price Co.,* 133 U. S. 505. It is there said:

" It follows that all the public domain of the United States within the state of Wisconsin was; in 1883, exempt from state taxation. Usually the possession of the legal title by the government determines both the fact and the right of ownership. There is, however, an exception to this doctrine with respect to the public domain, which is as well settled as the doctrine itself, and that is, that where congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that upon the performance of the conditions a patent of the United States shall issue to the donee or purchaser, and all conditions are complied with, the land alienated being distinctly defined, it only remaining for the government to issue its patent, and until such issue holding the legal title in trust for him, who, in the mean time is not excluded from the use of the property—in other words, when the government has ceased to hold any such right or interest in the property as to justify it in withholding a patent from the donee or purchaser, and it does not exclude him from the use of the property—then the donee or purchaser will be treated as the beneficial owner of the land, and the same be held subject to taxation as his property."

In several respects the case at bar does not come within the rules here laid down. The donee is not entitled to the patent until the land is surveyed, and the fact also ascertained in some manner, that it is not within some of the excepted tracts, that are not included in the grant. This, certainly, cannot be done until its boundaries are clearly defined.

Again, under the act of congress, entitled "An act to prevent the unlawful occupancy of public lands," approved February 25, 1885, it seems that the donee is also excluded from the beneficial use or possession of unsurveyed land, because, until surveyed, it is all a part of the public domain, and the defendant, no more than any one else, has any right to the possession of any particular tract or portion of it.

5. *Tender*. The complaint describes the property assessed in nine different subdivisions, and then alleges that certain taxes were levied upon the whole thereof. It is in the statutory form and is not required to state the details of the assessment. It, consequently, does not follow from this, either that the property was, or was not, assessed in such subdivisions. But it was the assessor's duty to enter it upon the assessment roll, in at least that number of parcels, and value each division separately. In the absence of allegation or proof to the contrary, we must presume that he did his duty. (Lawson Pres. Ev. 53.)

It has been decided that adjoining town lots, owned by the same person, may be assessed as one tract, but never under any statute similar to ours, that entirely separate and distinct pieces of real estate and personalty, can be thrown together in one general statement and valued as one piece of property. Such an assessment is void. (Cooley, Tax'n, 279; *People* v. *Hollister*, 47 Cal. 408.)

The answer alleges, that prior to the time the taxes became delinquent, the defendant unconditionally tendered to the tax receiver of Lander county, all the taxes due upon a number of these subdivisions, or parcels of property, amounting, in all, to fifteen thousand six hundred and forty-five dollars and sixty-six cents; that he refused to receive it, but subsequently to the commencement of this action, it was demanded by the district attorney, and paid to the county. The court held the plea of tender insufficient, and gave judgment for the full amount of tax and penalties, less the sum paid. The question is: can a taxpayer pay the taxes upon some subdivisions of his property, and not on all? It may be admitted, that, except under statutory authority, he cannot. Several apparently conflicting provisions of our statutes can be cited, which seem to indicate that the legislature did not understand it had authorized it. And yet, the language of Gen. Stat. Sec. 1096, " but no tax receiver shall receive any taxes for any portion less than the least

subdivision entered upon the assessment roll," seems to clearly answer the question in the affirmative. If he is not to receive the tax on anything less than the least subdivision, then certainly the manifest implication is, that he can receive it on anything more than that. Words of a statute are never to be construed as unmeaning, if it is possible to avoid it; but if the tax receiver must not receive the tax on anything less than the whole property, then certainly it is meaningless to forbid him receiving it on less than a subdivision. As the defendant tendered the taxes on what was certainly a subdivision of its property, it is unnecessary to consider whether anything less would also have been a subdivision—for instance, whether it could pay on each forty acres of its lands, and demand a receipt therefor.

It is argued that it is a matter of discretion with the tax receiver, whether he will receive the taxes so tendered or not. But this cannot be. Where a public officer has been clothed by statute, with power to do an act which concerns the rights of third persons, the execution of the power may be insisted on, though the phraseology of the statute be permissive merely, and not peremptory. (*Mayor* v. *Furze,* 3 Hill, 614.)

Nor was the amendment to section 1111, Gen. Stat., made a year later, a repeal of this provision, because—*First,* there is no necessary conflict between them; and *secondly,* so far as any bearing upon this question is concerned, the amendment was simply a re-enactment of the section as it originally stood. It cannot be supposed that the legislature, in one section of a statute, intended to repeal another section of the same act.

6. The question of removal to the United States circuit court, seems to have been virtually abandoned by the appellant upon the argument, and therefore requires no particular consideration.