# POLLARD *v.* SHIVELY *et al.*

*(Supreme Court of Colorado, December 7th, 1880.—Appeal from the District Court of Clear Creek County.)*

MINING CLAIM—LOCATION AND RE-LOCATION—THE BOUNDARIES CANNOT BE SO CHANGED AS TO INTERFERE WITH INTERVENING CLAIMANTS. One who has located a mining claim, had it surveyed and the certificate recorded, cannot, by a re-location, change the courses and distances so as to interfere with intervening claimants. One of the objects of the law requiring the certificate to be placed on record, is to notify others of the boundary claimed, that they may make locations if they wish—of ground not embraced in the boundary.

CERTIFICATE OF LOCATION—MONUMENTS AND FIELD NOTES—WHICH CONTROL. A recorded certificate of location is a statutory writing affecting realty—being in part the basis of the miners' right of exclusive possession and enjoyment of his mining location granted by Act of Congress—its purpose being, by the description it contains, to "identify the claim with reasonable certainty"—as in patents, grants, and other conveyances of real estate. The monuments required to be set up to mark the boundaries of the claim, serve the same purpose. Monuments, generally, being more obvious and certain, control that which is less so; hence, it is the rule, that the courses and distances of a survey must yield to its monuments. But in the absence of the monuments, as described in the certificate, and required by law, the courses and distances as contained in the certificate will control the survey.

PAROL TESTIMONY CANNOT BE ALLOWED TO CONTRADICT THE RECORD. When there is a variance between the monument called for in the certificate, and that actually found upon the ground, the courses and distances contained in the certificate must prevail; and parol evidence will not be allowed to contradict the record, and show that the statements of the certificate are incorrect—as that what the certificate denominates a "stake" was in fact a "stump." Parol evidence is only admissible in case of ambiguity in the record—but when the intent is clearly expressed no evidence of extraneous facts or circumstances can be received to alter it. Otherwise the boundary would depend, not upon the record, but upon the memory of witnesses.

CORNER POSTS, THE LOCATOR SHOULD KEEP THEM IN POSITION AS NOTICE TO OTHERS. There is no reason why a "stump," standing in the proper place, may not be adopted as a corner "post;" but in such case the certificate should give the fact. Prior to patent, the locator should keep his monuments in position to an extent that gives fair and reasonable notice to others who may desire to locate contiguous ground; and a claimant who has not kept up his boundary posts, will not be permitted to show the courses and distances of his recorded location to be erroneous, when the rights of an intervening locator, without notice, will be prejudiced. Otherwise, there would be no protection against "swinging locations"—an

evil against which the strict requirements of the statute were intended to protect.

SIDE LINE POSTS. Posts placed opposite the "discovery shaft," six hundred feet from one end, and nine hundred feet from the other end of the claim, is a substantial compliance with the requirement of the statute that the side posts be placed in the center of the claim—as with the corner posts properly located, the boundaries of the claim, with side posts so placed, can be "readily traced" by them.

ELBERT, C. J. This was an action brought by the appellees, Peter and David Shively, against the appellant, Pollard, in the district court of Clear Creek county, to recover possession of a certain portion of the Glendower lode, claimed by the appellant as a part of the Hardin lode, and embraced by him in his application for a patent therefor.

The Hardin lode was discovered in June, 1875, and, in the November following, was surveyed and staked and a certificate of location filed in the office of the register of deeds for Clear Creek county by the discoverers, Packard and Krise, remote grantors of appellant.

The Glendower lode was discovered the 6th of December, 1878, was surveyed and staked the 20th of February, 1879, and a certificate of location filed the 21st of February, 1879.

On the 26th of August, 1879, Pollard, who had become the owner by purchase of the Hardin lode, filed a certificate of re-location thereof, for the purpose, in the words of the certificate, "of more definitely defining the boundaries as originally staked out and filed, without waiver of any rights acquired by virtue of said original location."

The discovery shaft of the Hardin was situated six hundred feet from the east end and nine hundred feet from the west end of the survey. Both the original location and the re-location varied from a regular parallelogram from the discovery shaft west, each diverging at a slight angle to the north. By the courses and distances of the original location certificate, the Hardin location did not interfere with or embrace any portion of the Glendower. By the courses and distances of the re-location, the west end of the Hardin was swung further to the north and overlapped a portion of the Glendower; the portion so overlapped constitutes the ground in controversy.

At the trial below the defendant based his case upon the assumption that there was a mis-description in the original certifi-

cate of location; that the courses and distances therein were erroneous; that they did not describe the ground actually surveyed and staked, and sought to control the courses and distances by monuments, which he claimed were established at the time of the survey, and which brought the ground in controversy within the Hardin location. The verdict was for the plaintiff, and the defendant appeals.

The controversy here concerns chiefly two instructions given by the court, as follows:

"No. 1. The court instructs the jury that the defendant, under his location certificate *and the other evidence in this case*, cannot claim any ground except that which is described in the original Hardin location certificate, and that none of the ground covered by the original location certificate is sued for in this case. No. 2. The court instructs the jury that unless they find that the locators of the Hardin lode marked the surface boundaries of their claim, by six substantial posts, hewed or marked on the side or sides in towards the claim, and sunk in the ground, to wit: one at each corner and one at the center of each side line, the location was void as against any *bona fide* locator of the same ground, or any part thereof, who has complied with the law as to discovery and location of a mining claim, and that placing stakes upon the side lines of the claim opposite the discovery shaft, where the discovery shaft is six hundred feet west of the east end line and nine hundred feet east of the west end line, is not a substantial compliance with the law."

The first instruction, it is insisted, infringes the rule that monuments control courses and distances.

A recorded certificate of location is a statutory writing affecting realty, being in part the basis of the miner's right of exclusive possession and enjoyment of his mining location, granted by the Act of Congress of May 10, 1872.

The purpose of the description in a certificate of location, as stated by the statute, is to "identify the claim with reasonable certainty." Identification of the subject matter is likewise the purpose of all description in patents, grants, and other conveyances of real estate. The description in each being for like purposes should be governed by like rules. That the courses and distances of a survey must yield to its monuments, whether natural or artificial, is a familiar doctrine. 3 Wash., R. P., 631, and cases there cited.

Negligence in making surveys, imperfect instruments, variations of the needle, roughness and unevenness of the ground, are some of the elements of uncertainty, affecting courses and distances, and make obvious the propriety of the rule. *Ibid.*

It is only saying that that which is more obvious and certain shall control that which is less so. *Clark* v. *Wethey*, 19 Wend., 320. Hence, generally in descriptions of boundaries, in degree of certainty, natural objects rank artificial marks, as artificial marks in turn, rank the courses and distances given in a deed. 3 Wash., R. P., 631.

The difficulty in the case at bar is not about the rule, but its application.

It will be borne in mind that the conflict between the two lodes is at the west end of the Hardin, and that the monuments there, are those chiefly contested—evidence touching the original survey and its boundaries is conflicting.

The testimony of the plaintiff's witnesses, among whom was the surveyor who made the survey, tends to show that the courses and distances given in the original location certificate were correct, and, although the corner posts at the west end had disappeared, that they were actually placed at or near the points where the courses and distances would locate them. The east end corner posts and what were intended as the center posts, although not properly placed, were all found and identified by the surveyor, and compared with the courses and distances given for the east end.

No original monument was found at the northwest corner. Evidence was introduced by the defendant to show that a stake was originally placed at this corner, but the evidence also shows that it was not in existence at the time of the Glendower discovery or location, and consequently could not avail to control the courses and distances of the record, for reasons fully hereafter stated.

The monument upon which the defendant relied to control the courses and distances of the original survey was a stump standing at the southwest corner of the re-location, and claimed by him to be the southwest corner of the original location.

The certificate of location called for a post at this corner, but the defendant was allowed to introduce evidence to show that in

30

point of fact a post was never placed at this corner, but that this stump standing in the right place was adopted as a substitute for a post, and marked accordingly.

The act of Congress of July 26, 1866 (14 Statutes at large, 251), is silent as to how a mining claim shall be marked or designated on the ground.

The act of May 10, 1872 (Revised Statutes, Sec. 2324), provides that "the location must be distinctly marked on the ground, so that its boundaries can be readily traced.   All records of mining claims hereafter made shall contain the name or names of locators, date of location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim."

The legislature, in 1874, passed a law supplementing the act of Congress, prescribing more specifically how a mining claim should be marked.   Gen. Laws, 629.

Section 6 is as follows: " Such surface boundaries shall be marked by six substantial posts, hewed or marked on the side or sides which are in towards the claim, and sunk in the ground to wit: One at each corner, and one at the center of each side line. Where it is practically impossible on account of bed-rock to sink such posts, they may be placed in a pile of stones; and where in marking the surface boundaries at a claim any one or more of such posts shall fall by right upon precipitous ground, where the proper placing of it is impracticable or dangerous to life or limb, it shall be legal and valid to place any such posts at the nearest practicable point, strictly marked to designate the proper place."   Such statutory monuments substantially complying with the requirements of the law, would control courses and distances, so that where there was a variation between the courses and distances given in the certificate of location and the monuments on the ground, the latter would prevail.

If in the survey of a mining location a stump of sufficient size and stability stands at a point where a statutory post should be located, I see no good reason why it should not be hewed and marked, and adopted as a location post.   In such case, however, the descriptive survey should give both its real and assigned characters, otherwise it would not satisfy the call of the location certificate.   Where there was no variation between the monuments and the courses and distances, the failure to so designate it

would, perhaps, be unimportant, but in case of variation it would be of prime importance. In this case the call is for a post at the southwest corner, and it is insisted that parol evidence is admissible to show that while a post is called for, a stump was in fact established as the corner.

Courts have gone far in the admission of parol evidence in the matter of uncertain and disputed boundaries, but I am unable to see how this demand of the defendant can be sustained on principle. The certificate, like a deed, must be construed *ex viceribus suis*.

Where the intent is clearly expressed, no evidence of extraneous facts or circumstances can be received to alter it. 3 Wash. R. P., 400–404; *Bagley* v. *Morrill*, 46 Vt., 99.

The general rule stated more fully is, that parol evidence cannot be admitted to control or contradict the language of a deed, but latent ambiguities can be explained by such evidence. Facts existing at the time of the conveyance and prior thereto, may be proved by parol evidence, with a view of establishing a particular line as being the one contemplated by the parties, *where by the terms of the deed* such line is left uncertain. 3 Wash., R. P., 401; *Drew* v. *Swift*, 46 N. Y., 209; *Claremont* v. *Carlton*, 2 N. H., 369; *Peaslee* v. *Gee*, 19 N. H., 277. There is neither latent ambiguity or uncertainty in the terms of the certificate, to bring it within the meaning of the rule.

The call of the certificate is for a post; a stump does not answer the call. If parol evidence is admissible to show that a stump and not a post is the actual corner, it would be equally competent to show a pile of stones or any other monument uncalled for. This would not be construing the calls of a survey, but making them; it would not be an application of the rule that monuments control courses and distances, but an infringement of the rule that in the absence of latent ambiguity a deed cannot be varied or contradicted by parol evidence. It would not be controlling courses and distances by monuments, but contradicting both by parol evidence. *Claremont* v. *Carlton*, 2 N. H., 369.

The rule is, that where monuments are relied upon to control courses and distances, they must be found as called for. *Buckner* v. *Lawrence*, 1 Doug. (Mich.), 19; *McCoy* v. *Galloway*, 3 Ohio, 283; *Seaman* v. *Hogeboom*, 21 Bar., 399; *Finley* v. *Williams*, 9 Cranch, 315.

In the case of *McCoy* v. *Galloway, supra*, it was held that where the patent called for a tree of one kind, it was not competent to show a tree of another kind. In *Buckner* v. *Lawrence, supra*, it was held that a marked tree did not satisfy the call for a post.

The Court say: "The proposition was not to prove to the jury that there was a disagreement between the courses and distances, and the monuments and boundaries as given in the patent, and as they are found on the land, but to show that there was an actual line on the ground not described or called for in the patent, but in fact intended by the surveyor Gurley, as one of the boundaries of the plaintiff's grant. To admit parol proof of a marked line nowhere mentioned in the deed, but entirely variant from its calls, would serve to render titles to real estate dependent, not on deeds of conveyance and the language of the grantor, and courses and distances and monuments, but on the mere memory of witnesses."

In this view, the evidence introduced by the defendant, showing a monument other than the one called for, was not competent, and in the absence of any other monument or monuments to control the courses and distances of the original survey, there was no error in the first instruction. The defendant's case was the same as if no monuments had been given or called for. In such case parol evidence is not admissible to control the courses and distances. 3 Wash., R. P., 403; *Drew* v. *Smith*, 46 N. Y., 209; *Bagley* v. *Morrill*, 46 Vt., 94.

The last line of the instruction, viz: "that none of the ground covered by the original location certificate is sued for in this case," would be objectionable had not the fact which it states been admitted.

The instruction was equally justified in another view of the case.

Marking the boundaries of the surface claim as required by statute is one of the first steps toward a location. It serves a double purpose. It operates to determine the right of the claimant as between himself and the general government, and to notify third persons of his rights. Another, seeking the benefit of the law, going upon the ground, is distinctly notified of the appropriation, and can ascetain its boundaries. He may thus make his own location with certainty, knowing that the boundaries of the other cannot be changed so as to encroach on ground duly ap-

propriated prior to the change.    The prevention of frauds by swinging or floating, is one of the purposes served.

The record also serves a double purpose.    As between the claimant and the government it preserves a memorial of the lands appropriated, after monuments, in their nature perishable, are swept away.    It also supplements the surface marking, in giving notice to third persons.    *Golden Fleece, etc.,* v. *Cable Consolidated, etc., Co.,* 12 Nev., 312; *Gleason* v. *Martin White M. Co.,* 13 Nev., 471.

Counsel for the appellant submitted to the court below, in their first instruction, and urge here the following proposition:

"That when a lode is marked as required by the law, it is to be presumed such marking is sufficient to notify all persons of the appropriation of the ground within the surface limits of such boundaries, *and a person is not bound in law to keep the corners of his claim marked and in the position they were originally placed;* that when a claim has been lawfully and properly located, the law presumes it will remain so, and that all subsequent owners have at least constructive notice of the prior appropriation of the ground thus located, even though as a matter of fact they had no such notice."

We are dealing with claims, not patents or grants, where the fee has passed.

Whether a claimant with a true record must keep good his surface monuments, we need not say; the record in this case was not a true record.

Where there is a variation to any considerable extent between the courses and distances of the location certificate and the monument established on the ground, the record, with its misdescription, in point of fact, gives no notice of the ground actually appropriated.    If the monuments are swept away, no search, no exercise of prudence, diligence or intelligence would advise the subsequent locator of the prior appropriation.    In such case the rule demanded by the defendant would work the greatest injustice and hardship, and be an interpretation of the law in the interest of erroneous records and indolent claimants.    The record failing in its constructive notice, I think it just to insist that the statutory monuments shall be found performing their statutory and essential duty of actual notice, and to say that where a variation exists between the monuments and the courses and distances of the lo-

cation certificate, it is necessary, prior to patent, for the locator, as against subsequent locators, to keep up his monuments to an extent that gives fair and reasonable notice. In other words, a claimant who has not kept up his boundary posts will not be permitted to show the courses and distances of his recorded location to be erroneous where the rights of an intervening locator without notice will be prejudiced.

Tried by this rule, the defendant had no case, and the first instruction was justified.

At the date of the Glendower location there was no monument in existence at the west end to warn the plaintiff that the ground had been already appropriated, neither were there any center stakes at the center of the side lines. The only monument claimed as in existence at that time at the west end, where the conflict arises, was a stump partially blazed and imperfectly marked in pencil. The certificate instructed the subsequent locator to look for a post at this corner; it did not advise him that a stump had been utilized as a post.

If the pretensions of the defendant are to be allowed, there would be no protection for subsequent locators against swinging locations, an evil against which the strict requirements of the statute was intended to protect.

It was therefore competent for the court, the facts being undisputed, to say to the jury that the defendant, not having maintained his location monuments so as to give notice of the ground appropriated, that he could not claim ground other than that which was described in his record.

The second instruction given by the court was objectionable. The requirement that the side posts be placed in the center of the side lines is satisfied if they be substantially at the center; where there is a discrepancy of an hundred and fifty feet, as in this case, they cannot be said to be in the center.

I think it is too much to say, however, the claim being otherwise marked as required by the statute, that the failure to place the side posts in the center of the side lines will invalidate the location; such an omission might exist, with all the corner posts properly placed and the lode exposed and marked the entire length of the location.

It would be an unnecessarily harsh and unreasonable construction of a beneficent statute.

It is reasonable to say that the statutory requirements respecting the marking of the surface boundaries with posts, are so far imperative as to require that the boundaries may be, in the language of the statute, "readily traced" by them, and that the notice which the statute contemplates and seeks by and through them may be substantially as conspicuous as though the omission did not exist. *Finley* v. *Williams*, 9 Cranch, 168.

As, independent of this instruction, the defendant had no case, the giving of it was error without prejudice.

It is not necessary to examine any of the other assignments.

The judgment of the court below is affirmed, with costs.

*L. C. Rockwell*, attorney for appellant.

*R. S. Morrison*, attorney for appellees.

## BOOK NOTICES.

A TREATISE ON THE JURISDICTION OF COURTS. In two volumes, each complete in itself. By J. C. WELLS, Author of "Res Adjudicata and Stare Decisis;" "Separate Property of Married Women;" "Questions of Law and Fact;" "Instructions to Juries and Bills of Exception;" "Magna Charta;" etc. Volume I, containing, Part I, Elementary Principles. Part II, Specific Original Jurisdiction. St. Paul: West Publishing Company, 1880.

This book will be found of great value to the student, and especially the lawyer in active practice. The author has evidently bestowed much care and labor in its preparation, and has not only presented an exhaustive view of the important subject treated, but has observed such method as classifies and places it in most convenient form for ready reference. The style is easy, clear and attractive. While the book is not encumbered with a great array of citations, yet the references to, and extracts from the opinions of the courts are quite sufficient to enable the student to avail himself of the best authorities. The general plan of the author is to embody in the text, in the main, such quotations as he chooses to make from judicial deliverances, rather than to place them as foot notes, which is too much the custom, with most law writers. The work is divided into chapters of convenient length, and the sections run in consecutive numbers—making references easy and convenient. It is a book of 650 pages, well printed, on good paper, bound law style. We commend it to the favor of the profession, with the assurance that the well-earned reputation of the author,—resulting from his former productions—is fully maintained in this one. We shall look forward with interest, to the second volume, not because it is necessary to supplement this—which is complete within itself— but, because everything from the pen of the author is valuable to those for whom he writes.