### CARROLL v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1907.)

No. 1,398.

**1. PUBLIC LANDS—UNLAWFUL INCLOSURE—CRIMINAL PROSECUTION.**

On the trial of an indictment for violation of section 1 of Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524], containing three counts, the first charging the unlawful erection and construction of an inclosure of certain public lands, the second the unlawful maintenance and control of such inclosure, and the third the unlawful prevention and obstruction of free passage over said lands by means of fencing and inclosing

the same, a verdict of not guilty on the first and third counts is not inconsistent with one of guilty on the second.

2. CRIMINAL LAW—TRIAL—UNWARRANTED STATEMENTS BY COUNSEL—ACTION BY COURT.

It is a general rule, with rare exceptions arising from extreme cases, that prejudice created by unwarranted statements of counsel in the presence of the jury is sufficiently cured by an admonition by the court to the jury to wholly disregard such statements. ·

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1693.]

3. SAME.

During the trial of a criminal case the district attorney stated to the court in the presence of the jury that he was informed that attempts had been made by a brother of defendant to induce persons who were acquainted with jurors in the case to influence them in favor of defendant, and such attorney was directed by the court to investigate the matter, and, if he thought the information correct, to institute proceedings in contempt. On exceptions by defendant's counsel and on their request, the court at once admonished the jury that they should not be influenced in favor of or against either party by what had been said, but should lay the same entirely out of their minds and consider the case on the evidence alone, which admonition was repeated in the charge. *Held*, that the occurrence was not prejudicial to defendant so as to require a reversal of a judgment of conviction which was amply supported by the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 730.]

4. PUBLIC LANDS—UNLAWFUL INCLOSURE—DEED TO UNSURVEYED LANDS.

On the trial of a defendant charged with maintaining an unlawful inclosure of public lands, a deed from a railroad company to defendant for unsurveyed public lands, described by section and subdivison as though surveyed, is inadmissible to show color of title, since it creates no right to any particular land.

5. SAME—TRIAL—INSTRUCTIONS.

The charge of the court on the trial of a defendant charged with maintaining an unlawful inclosure of public lands, construed in its entirety, *held* free from error.

In Error to the District Court of the United States for the District of Montana.

The plaintiff in error was tried and convicted under an indictment charging him with the commission of three separate and distinct offenses under Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524]—"An act to prevent unlawful occupancy of the public lands." 1 Supp. Rev. St. 477. In the first count it was charged that on June 29, 1905, he had wrongfully and unlawfully made, erected, and constructed an inclosure of certain public lands, aggregating about 2,040 acres; in the second count it was charged that on the same date he was wrongfully and unlawfully maintaining and controlling an inclosure of said public lands; and in the third count it was charged that on the same date he did wrongfully and unlawfully prevent and obstruct free passage and transit over and through said lands by means of fencing and inclosing the same. During the progress of the trial, and in the presence of the jury, and during the examination of a witness on behalf of the United States, the following colloquy occurred between the court, Mr. Rasch, the district attorney, and Messrs. Horsky & McBride, attorneys for the plaintiff in error:

"Mr. Rasch: Your honor, I was informed this morning, not very much to my surprise, that a list, a typewritten list, of the panel of the jury sitting in this case, had been distributed in town, with the request that if any of the parties to whom a list of that kind was handed had any friends on the jury, that they intercede with the jury, or some member or members thereof, on

behalf of the defendant; and I have here a copy of one of the lists that was handed to one gentleman with the request that he perform the same offices on behalf of the defendant. It contains, as your honor will notice, a list of the names of the jurors serving in this case, and, as I stated, it was not a matter of surprise to me to learn that that sort of thing was going on, in view of certain experiences and certain things I learned in the former trial. The list was handed to this gentleman by the brother of the defendant, Mr. Will Carroll, and in view of those circumstances I suggest that some steps ought to be taken, in view of the result of the former trial of this case. It is not only a contempt of court, but it is in direct violation of the statute with reference to proceedings of this kind in a court of justice.

"The Court: Is this Will Carroll that you have referred to, W. C. Carroll?

"Mr. Rasch: Yes, your honor; he is the man who delivered the list to one gentleman, with the request that if there were any members of the jury here who were friendly to him, that he exercise his influence with such jurors in the defendant's behalf.

"The Court: I am of the opinion that this is in itself a contempt of court, and that this party ought to be punished, if it is shown that the statement of the district attorney is substantiated by facts, and I will ask the prosecuting attorney to look into this matter just as soon as possible.

"Mr. Rasch: I shall proceed with the matter, your honor, just as soon as this case we now have in hand has been disposed of.

"The Court: And the court will take such action in connection with such proceedings as may be deemed advisable.

"By Mr. McBride: If the court please, I submit that this is a matter that should be taken care of at once, and not at the close of the case that is now on trial here. We want it taken up at once, immediately, if your honor please, in order that it may be disposed of, so that it will not operate to the prejudice of the defendant, Mr. Joseph T. Carroll, in the case now on trial. If any purpose was intended to be served by the district attorney in making the statement that he has made at this time, it was for the purpose of prejudicing the case of the defendant before this jury, or for the benefit of the plaintiff in this action, and to the prejudice of the defendant. If Mr. William Carroll has, in any respect, been guilty—

"The Court (interrupting): I don't think that you have any right to make that remark as to the purpose of the statement of the prosecuting attorney.

"Mr. McBride: If the court please, this is a matter before the court now. If any purpose at all is to be served by this matter, and bringing it up at this time, it is for some purpose in this case, for the benefit of the government, and against the interests of the defendant. If Mr. W. C. Carroll has, in any respect, been guilty of any contempt of this court, it is the duty of the attorney of this court to come before the court without any delay, and with the proper evidence to institute proceedings against the party guilty of such contempt. We should have an opportunity, if the court please, in protection of the rights of the defendant here, to show whether or not anything of the kind suggested by the district attorney, and intimated by him in his statement, is going on, or that any effort at all is being made by the defendant, or at his instance, which should not be made in his behalf. We submit, if the court please, that the statement of the district attorney here in this court, in the presence of this jury, sitting in the case of the United States against Joseph T. Carroll, is not proper. It puts us in the wrong light before the jury during the trial of this case, and operates against the interests of the defendant. If it is not intended to be prejudicial to the rights of the defendant, it certainly has no place here; and, if it is against the interests of the defendant, we certainly have a right to have the matter taken up right now, if the court please, and to have it disposed of without delay, and before further steps are taken in the trial of this case against Mr. Joseph T. Carroll. It is no more than right that proceedings should be taken at once to investigate this matter, as one of the rights of the defendant as a citizen of the United States. The United States is not here to do an injustice to any man; it is here to do justice, and it is here to see that the defendant gets a fair trial, and it is just as much a part of the case of one of the parties to this action of the United States against Joseph T. Carroll as it is the other party; and I submit, may it

please the court, that this matter should be taken care of at once, in justice to Mr. Joseph T. Carroll, the defendant in this case.

"Mr. Horsky: I not only wish to concur in everything that Mr. McBride has said, but I wish to add, also, that this matter has been brought up in a rather unusual and extraordinary way, as I view it. I regard it as unquestionably prejudicial to the interests of the defendant on trial here, and as calculated to place our cause in an entirely false light before the court and the jury. I, therefore, may it please your honor, most strenuously object to the remarks of the prosecuting attorney and his charge as intimated in his own ex parte statement, and I except to it in unqualified terms; and not only do I object and except to the remarks of the district attorney made in the presence of this jury, as I have done, but I wish to say and ask, and move, your honor, that this matter not only be immediately investigated, but that likewise every bit of the statement and of the remarks of the district attorney be expunged from the record, and that the jury be instructed in unquestionable terms to disregard every iota of that statement that has been made here.

"Mr. Rasch: I shall be prepared at any time, of course, to proceed in this case, when the court is at liberty to take the matter up. Of course, it is covered by the statute, and criminal proceedings may be instituted for a violation of that statute, in addition to the fact that it is a contempt of court. I simply made the statement to your honor for the reason that I feel that under the circumstances there ought to be a departure from what has always in the past been the practice of allowing the jury to separate; but I think under these circumstances that I have mentioned, and the experience we have had heretofore, the court, in justice and in fairness to all parties concerned, ought to make an order to the effect that the jury be kept together until the final determination of this case.

"Mr. Horsky: May it please the court, in so far as keeping the jury together is concerned, it is entirely agreeable to the defendant, and the only reason that this has not been stipulated in advance is because of the fact that we have unmeasured confidence in this jury, that we have unmeasured and unstinted confidence, and we have no objection at all, if your honor please, to have an order made as suggested by the prosecuting attorney, if your honor considers it proper that they should be kept together, in order that there may not be any suspicion or taint of suspicion, or taint of any suspicious practice by the defendant, or at the instance of the defendant, in the least, or even the remotest suggestion of it. But I wish to object and except in unqualified terms to the language of the prosecuting attorney, and the remarks he made in the presence of this jury with reference to this proceeding.

"The Court: The order will remain as I first indicated. I would like the prosecuting attorney to advise the court as soon as he can as to the matter, and upon such advice the court will take such steps as he may deem advisable. I will say to the jury that I had not intended to keep you together during the progress of the trial, until this disclosure this morning, but I think upon the disclosure the court will be warranted in ordering that you be kept together during the trial of this cause. It was not my intention to do so in the first place, but as the facts have been disclosed here, the court will order that you be kept together during the trial. I will say to you, however, with regard to what has taken place just now in court, that you should not allow that to influence your minds in the least, either one way or the other, because it is not a matter of evidence in this particular case, and it is not a matter that you should consider in this case, as to influencing your minds either for the government, either for or against the government, or for or against the defendant, and therefore you will lay this transaction entirely out of your minds, and everything that has been said here in court in connection with it.

"Mr. Rasch: If the court please, before proceeding with the case I desire to present an application for an order to show cause directed to William C. Carroll—

"Mr. McBride: If the court please, this is before the jury, and the court has expressly instructed the jury to disregard the statements of the district attorney regarding this matter, and we submit that to call a matter of that

kind to the attention of the court in the presence of the jury is entirely improper, and I wish to say further—

"The Court: Without any further discussion of the matter, I will ask that the jury retire until this matter has been submitted."

And thereupon the jury retired from the courtroom.

The other facts necessary to be considered on the writ of error are stated in the opinion. The jury found the plaintiff in error not guilty on the first and third counts, and guilty on the second count.

McBride & McBride and Edward Horsky, for plaintiff in error.
Carl Rasch, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended that the verdict of acquittal on the first and third counts necessarily involves acquittal on the second count, that the offenses as charged in the three counts overlap each other so that the evidence which would sustain one count would sustain all, and that the court erred in denying the motion which the plaintiff in error made for arrest of judgment on that ground. But it must be apparent that the plaintiff in error might be guilty of erecting an unlawful inclosure of public lands as charged in the first count, and yet might not be guilty of maintaining it, and it is equally clear that he might not be guilty of erecting an inclosure and yet be chargeable with maintaining and controlling it. It is also conceivable that one who maintains and controls an inclosure of public lands might not necessarily be guilty of obstructing and preventing free passage and transit over and through the public lands by means of fencing and inclosing the same, since the fence and inclosure might have been made by another. The indictment was returned on December 30, 1906. The evidence was that all of the fences had been erected prior to the fall of 1903, so that prosecution on the first count was barred by the statute of limitations; and it also showed that some of the fences were not made by the plaintiff in error, but were built by others before they came into his control.

A more difficult question is presented by the assignment of error which is addressed to the language and conduct of the district attorney concerning the contempt which was alleged to have been committed during the trial by W. C. Carroll, a brother of the plaintiff in error. Undoubtedly the proper course of the district attorney would have been to have asked that the jury be sent out of the courtroom before directing the attention of the court to the alleged contempt. Upon a careful consideration of the record, however, we are not convinced that the language and conduct of the district attorney was, under the circumstances, such prejudicial error as to justify a reversal of the judgment, for the court instructed the jury that they should allow nothing that was said or done in that connection to influence their minds in the least, either one way or the other, and that they should lay the transaction entirely out of their minds, and again, in charging the jury on that subject, said:

"Gentlemen of the Jury: Before proceeding further with this case, I will admonish you again, as I did last evening, not to let this other proceeding have anything to do with your consideration of this case. Put it out of your minds entirely, and decide the case absolutely upon the evidence adduced before you, and the law as it will be given you by the court."

With some rare exceptions arising from extreme cases, it is generally held that prejudice created by unwarranted statements of counsel in the presence of the jury is sufficiently cured by an admonition of the court to the jury, such as was given in the present case. Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708; Weeks v. Scharer, 64 C. C. A. 11, 129 Fed. 333; Chesebrough v. Conover, 140 N. Y. 382, 35 N. E. 633; Egan v. Murray, 80 Iowa, 180, 45 N. W. 563; State v. Hack, 118 Mo. 92, 23 S. W. 1089; Commonwealth v. Poisson, 157 Mass. 510, 32 N. E. 906; State v. Butler, 85 Me. 225, 27 Atl. 142; State v. Braswell, 82 N. C. 693; Edwards v. State, 90 Ga. 143, 15 S. E. 744; Strowger v. Sample, 44 Kan. 298, 24 Pac. 425; Chicago City Ry. Co. v. Pelletier, 134 Ill. 120, 24 N. E. 770; Johnson v. Brown, 130 Ind. 543, 28 N. E. 698. In consideration of the fact that the verdict was clearly justified by the evidence, we are of the opinion that the improper conduct of the district attorney, in view of the repeated injunction of the court to the jury to wholly disregard it, does not demand a reversal of the judgment, although it might have that effect in a case in which the evidence was less clear.

But the principal objection of the plaintiff in error in this connection is directed to the language of the court, which it is claimed was prejudicial in the highest degree. We do not discover that the court said, in the presence of the jury, anything not justified under the circumstances, nor do we see how the court could well have dealt with the matter so brought before it in any manner other than as shown in the record. In addition to this, the record discloses that no exception whatever was taken to any of the remarks so made by the court. In this connection it is proper to advert again to the fact that the jury were repeatedly instructed to disregard everything done or said in the colloquy relating to the contempt proceedings, and to decide the case absolutely upon the evidence adduced before them and the law as given by the court. Such an instruction was sufficient to cure error such as is charged here, if error it were. Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224; Lovejoy v. United States, 128 U. S. 171, 9 Sup. Ct. 57, 32 L. Ed. 389; McKnight v. United States, 130 Fed. 659, 670, 65 C. C. A. 37.

It is contended that the court erred in ruling that a certain deed of the Northern Pacific Railway Company to the plaintiff in error was not admissible in evidence for the purpose of showing color of title. The deed was for unsurveyed land "which, when surveyed, will be described as follows: The northeast quarter of the northwest quarter, and the south half of the northwest quarter, of section 25, in township 4 north, of range 7 west of the Montana principal meridian." The court ruled that the deed was admissible for the purpose of showing good faith, but for no other purpose. We find no error in that ruling. Until public land is officially surveyed, it cannot be described or conveyed by reference thereto as sections or subdivisions of sections. In

Magwire v. Tyler, 8 Wall. (U. S.) 650, 19 L. Ed. 320, it was held that conveyance of such lands "creates no right of private property in any particular tract of land which can be maintained in a court of justice without an antecedent survey and location." And in Robinson v. Forrest, 29 Cal. 217, it was well said:

"Even after a principal meridian and base line have been surveyed, neither the sections nor their subdivisions can be said to have any existence until the township is subdivided into sections and quarter sections by an approved survey. The lines are not ascertained by the survey, but they are created. * * * There is in fact no such land as that described in the petition until it has been located within the congressional township by an actual survey and establishment of the lines under the authority of the United States."

See, also, Cragin v. Powell, 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566; United States v. Birdseye, 137 Fed. 516, 70 C. C. A. 100; United States v. Montana L. & M. Co., 196 U. S. 573, 25 Sup. Ct. 367, 49 L. Ed. 604. The court in instructing the jury gave to the plaintiff in error all the substantial benefit that would have accrued to him had the deed been ruled admissible in evidence for the purpose of showing color of title. The instruction was that, if the plaintiff in error honestly believed that he had a right to inclose such land by reason of having previously procured the deed, the jury might consider that fact as tending to show the intent with which he inclosed that particular tract of land. "Because," said the court, "without the intent to inclose public lands, knowing them to be such, there can be no offense."

Error is assigned to the following portion of the charge to the jury:

"Your authority in judging of the effect of evidence is not arbitrary, but should be exercised with legal discretion and in subordination to the rules of evidence. You are not bound to find in conformity with the declarations of any number of witnesses which do not produce conviction in your minds, or against a presumption or other evidence satisfying your minds."

It is urged against this instruction that apparently it was aimed at the witnesses of plaintiff in error and intended to discredit them, since there were 14 of them, whereas there were but 4 for the prosecution; and that it was erroneous for the further reason that it conveyed to the jury the idea that the plaintiff in error must make out his defense so clearly as to produce conviction in their minds. We cannot see that the instruction is open to either objection. It clearly is the law that the jury were not bound to find in conformity with the declarations of any number of witnesses which did not produce conviction in their minds. The portion of the charge so excepted to should be read in connection with the general charge on that branch of the case, in which the court defined the term "reasonable doubt," and instructed the jury that all the presumptions of law, aside from the effect of evidence, are in favor of innocence, and that every person is presumed to be innocent until proved guilty. Said the court:

"If, therefore, upon such proof as here adduced, considering it in its fullness and entirety, there remains in your minds a reasonable doubt as to the guilt of the accused, he is entitled to the benefit of it by an acquittal; that is, the evidence must establish guilt under the charge to a reasonable and moral certainty, a certainty that convinces your reason and judgment, acting under your duties and obligations as jurors."

It is plain that, when the whole charge is considered, the jury could not have been misled by anything that was said in the particular portion thereof that was excepted to. Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624.

We find no error. The judgment is affirmed.