# No. 18,447.

James W. McNulty, et al. *v.*
Lincoln G. Kelly, Trustee.
(346 P. [2d] 585)

Decided November 16, 1959.

Mr. Frank DeLaney, pro se.

Messrs. Adams, Heckman, Traylor & Ela, for plaintiffs in error.

Mr. Robert L. Cranmer, Mr. H. Byron Mock, Mr. Thomas K. Younge, for defendant in error.

*In Department.*

Opinion by Mr. Justice Sutton.

The parties will be referred to as they appeared in the trial court where plaintiffs in error were plaintiffs and defendant in error was defendant.

The cause is before this court on writ of error to review a judgment of the trial court which confirmed title in defendant to certain placer mining claims.

The record discloses that defendant as trustee represents the owners of three claims located November 7, 1931, and known as the Bentonite No. 1, the Bentonite No. 2 and the Bentonite No. 3. The location certificates of which were duly filed in Mesa County, Colorado, where the placers are situated.

The location certificate for the Bentonite No. 1 describes the property therein as follows: "Containing 150 acres in the County of Mesa, State of Colorado, described by legal subdivisions of public land survey as follows: The E ¼ of the W ½ of Section 18; W ¼ of the SE ¼ of Section 18; the E ¼ of the W ½ of Section 7, Twp. 12 S., R. 100 W., 6th P.M. The E ¾ of the S ½ of the SE ¼

of the SE ¼ of Section 32, Twp. 1 S., R. 1 W., Ute Meridian."

The other two location certificates contain similar language except as to the number of acres and the subdivisions described.

On March 4, 1955, defendant, preparatory to patenting these claims, caused to be located and thereafter recorded six amended location certificates to correct any errors which might appear in the original filings.

On April 21, 1947, the plaintiffs located three placer claims known as Ute Numbers 1, 2 and 3, and filed for record location certificates thereof. These locations resulted in a conflict with, and overlap of, defendant's claims and this lawsuit followed.

There is no dispute as to the discovery of minerals, peaceable entry, citizenship, or the doing of assessment work by either party. The plaintiffs' claims are described by reference to the quarter section corner between Sections 18 and 19 in Township 12, thence by courses and distances; except Number 3 which is also described as embracing the NW ¼ NE ¼ of Section 19; and the W ½ SE ¼ of Section 18; Twp. 12 S., R. 100 W., 6th P.M.

There was an agreed statement of facts below. After trial to the court comprehensive Findings of Fact and Conclusions of Law were made and judgment entered in defendant's favor.

Plaintiffs assert that the trial court erred because:

1. The original Bentonite Locations were invalid because located as if on publicly surveyed land.

2. That the original locations of said claims were not properly marked and were therefore void.

A review of the record and authorities impels us to the conclusion that the learned trial court made a proper disposition of the matters before it and that plaintiffs' assertions are without merit.

As to plaintiffs' ground of error concerning public surveys we point out that the location of placer claims

is governed first by federal law (30 U.S.C.A. Sections 28 and 35); second by the Colorado Statute (C.R.S. '53, 92-22-12) if not in conflict with the federal law, and third by court decisions interpreting the statutes.

Part of the federal statute (Sec. 28 supra) provides that the record of a claim shall, among other things, contain "such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." Official United States surveys have been held to be such natural monuments. See *Clark v. Pueblo Quarries, Inc.* (1939), 103 Colo. 402, 86 P. (2d) 602. We believe it is logical to also hold that a private survey on unsurveyed lands, which is tied to a nearby public survey, is a sufficient reference to a permanent monument to comply with this provision.

The Colorado statute supra requires, among other things, the same type of reference, and that before filing his location certificate, the discoverer of a placer claim shall post on each claim a sign or notice with certain data thereon and shall mark "the surface boundaries with substantial posts, sunk into the ground, one at each angle of the claim."

The federal statute (Sec. 35) further provides that where the land has been previously surveyed "the entry in its exterior limits shall conform to the legal subdivisions of public land," and that "where placer claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required, and all placer-mining claims located after the 10th day of May 1872, shall conform as near as practicable with the United States system of public-land surveys, and the rectangular subdivisions of such surveys, and no such location shall include more than twenty acres for each individual claimant; but where placer claims cannot be conformed to legal subdivisions, survey and plat shall be made as on unsurveyed lands; * * *."

The trial court, basing its Findings of Fact and Con-

clusions of Law upon the evidence before it, and upon a full discussion of the applicable laws as found in *London-derry Mining Co. v. United Gold Mines Co.* (1906), 38 Colo. 480, 88 Pac. 455, made the following finding, to-wit:

"The purpose of these provisions is to require such a description of mining locations as will enable persons seeking to acquire title to ground in the vicinity to ascertain what ground has been previously located.

"Their intention is to impart notice to third parties. And whether or not there is a reference to such a natural object or permanent monument as to satisfy the provisions of the law must necessarily be a question of fact. If by any reasonable construction of the language employed in the description will impart notice to subsequent locators it is sufficient.

"A liberal construction should be given to the location certificate, and the same should not be declared insufficient unless it clearly fails to identify the claim.

"The reference contained in the description is sufficient if a reasonable man, by using the description and other evidence, is able to identify the location of the claim; that is, the description is sufficient if a reasonable person from reference made therein and outside evidence or investigation can determine the location involved.

"As of June 27, 1896 the SE ¼ of Section 18 and the NE¼ of Section 19, and the common quarter corner between said sections, were located and, of course, could be definitely ascertained."

Then the trial court proceeded to discuss and show how a reasonable man could read each of the three descriptions in question and proceed to locate them on the ground.

Plaintiffs cite *Carroll v. U. S.* (1907), 154 Fed. 425, 83 C.C.A. 245 (a prosecution for illegally enclosing public lands), which held that until public land is officially surveyed it cannot be described or conveyed by refer-

ence thereto as sections or subdivisions and that no right of private property in any land so described can be maintained in a court of justice without an antecedent public survey and location. Other cited cases which hold to the same effect are: *State v. C.P. R.R. Co.* (1890), 21 Nev. 94, 25 Pac. 442 (state could not collect taxes on such lands granted to railroads until the costs of making the surveys had been paid by the grantees); but after passage of a statute allowing taxation of "possessory rights" it was held in *Central Pacific Railroad v. Nevada* (1895), 162 U.S. 512, 40 L. Ed. 1057, that such lands could be taxed before surveying costs were paid by the grantee; and the fact that the lands in question when surveyed might turn out to be mineral lands and so excluded from the operation of the grant, did not bar the tax action. In *United States v. Wyoming* (1947), 331 U.S. 440, 91 L. Ed. 1590, it was held that until an official survey was completed the United States Government retained title to lands granted *in praesenti* to the state by its enabling act. In *Smith v. Whitney* (1937), 105 Montana 523, 74 P. (2d) 450, it was held no township or range lines can exist on public lands until officially surveyed. And in *Robinson v. Forrest* (1865), 29 Cal. 317, which was a suit to determine title to swamp land in California, it was held that only a federally approved survey will do, and until such is made the sections and their subdivisions have no existence. The court pointed out that only official federal surveys can create the actual lines of a section within a township. *Bullock v. Rouse* (1889), 81 Cal. 590, 22 Pac. 919, followed *Robinson,* supra, in regard to homestead lands.

Plaintiffs further rely on 1 *Lindley on Mines,* 2d Edition 793-794, wherein the author makes a statement similar to that in *Carroll,* supra, but *Lindley* applies it to mineral locations stating:

"Sometimes part of a township has been surveyed so that as a matter of calculation it is not difficult to determine the precise or proximate position of adjoining un-

surveyed lands and the section number which would be given them when surveyed. The proximity of the unsurveyed to the surveyed lands has led to an error quite common of treating these unsurveyed lands as if the lines of the public surveys had been extended over them, and locating placer claims thereon by the government subdivision which the locator determines would be created when the system of surveys is extended over them. But such a description would not identify anything and would not satisfy the law."

Several authorities are cited by *Lindley* for this proposition including *Robinson,* supra, *State,* supra, and *Bullock,* supra, none of which had to do with the sufficiency of a mineral location, hence are not in point. As to the latter, the rule is otherwise and we believe *Lindley* was in error in stating a contrary rule. Even Mr. Lindley states in his 3rd Edition at pages 899-900 that:

"In the initiation of rights upon public mineral lands, as well as in the various steps taken by the miner to perfect his location, his proceedings are to be regarded with indulgence, and the notices required invariably receive at the hands of the courts a liberal construction."
* * *

"The courts always construe these notices liberally, and if by an intendment the proof can be reconciled and made consistent with the statement contained in them, the jury will be allowed to say whether or not, upon the whole proof, the identification is sufficient.

"To hold the locator to absolute technical strictness in all the minor details would be practically to defeat the manifest end and object of the law. The pioneer prospector, as a rule, is neither a lawyer nor a surveyor. Neither mathematical precision as to measurement nor technical accuracy of expression in the preparation of notices is either contemplated or required. The law being designed for the encouragement and benefit of the miners should be liberally interpreted, 'looking to substance, rather than shadow, and should be administered

on the lines of obvious common sense.' (Cheesman v. Hart, 42 Fed. 98, 99, 16 Morr. Min. Rep. 265.) Mere imperfections in the certificate will not render it void.

"As was said by the supreme court of Utah, —

"If by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient." (Citing numerous authorities.)

And Lindley continues in his 3rd Edition at pages 902-03 as follows:

"The certificate is not required to show the precise boundaries of the claim as marked on the ground, but it is sufficient if it contains directions, which, taken in connection with such boundaries, will enable a person of reasonable intelligence to find the claim and trace the lines.

"The object of any notice at all being to guide the subsequent locator and afford him information as to the extent of the claim of the prior locator, whatever does this fairly and reasonably should be held to be a good notice. Great injustice would follow if, years after a miner had located a claim and taken possession, and worked upon it in good faith, his notice of location were to be subject to any very nice criticism."

To the same effect as the *Lindley* quotations regarding a liberal construction of location certificates also see: *Lucky Five Min. Co. v. Central Idaho Placer Gold M. Co.* (1951), 71 Ida. 490, 235 P. (2d) 319.

Plaintiffs also cite *Costigan on Mining Law* (1908) at page 250 where it is said in part: "The whole object of requiring the location to be staked on the ground is to enable prospectors to find readily the situs and exact area of the claim, and a description in a notice by reference to imaginary lines protracted on the township plats in the surveyor general's office wholly fails to serve that object."

In the first place if *Costigan* really intended to apply such rule to surveyor general's descriptions in all situa-

tions, we would disagree with him and choose not to follow it. We think however that he had no such intention, since the wording is without citation of authority and is used in connection with his discussion on "Marking The Location On The Ground" and particularly refers only to the need to actually stake a claim. When considered in context we do not believe it should be construed as out of harmony with the views expressed herein.

It thus is apparent from both the applicable statutes and decisions that a placer mining location certificate may contain a description of the land by section numbers not based upon an official U. S. Government survey. (See *Young v. Papst* (1934), 148 Ore. 678, 37 P. (2d) 359.) The only true requirement is that some description be used that will lead a reasonable man to the claim locations. It need not assume the formality of description required to prove title for patent, or taxability, or homesteading or other types of transactions where paramount title remains in the government until an official survey is made. Here the locator, if in full compliance as to discovery and other requirements, can require a patent at a later date from the government by furnishing an officially surveyed description.

When the adequacy of a locator's description is challenged as not conforming with the official government survey it is for the trial court or jury to decide whether the locator had a reasonable excuse for not so conforming. *Young,* supra. It is a question of fact whether a location certificate adequately describes the intended claim. *Londonderry,* supra; *Brady v. Husby* (1893), 21 Nev. 453, 33 Pac. 801.

Here the descriptions were in fact tied to the official "Map of Fractional Township No. 12 South of Range No. 100 West of the 6th Principal Meridian in Colorado" of the United States' "Surveyor General's Office Denver, Colo. June 27th, 1896" as shown by defendant's exhibit 3. This map showed section 17 and the north half

of section 20. Projected lines run thereon westward to and show the SE ¼ of section 18 and the NE ¼ of section 19. Courses and directions of the projected lines are shown.

■ In following the federal statute on location it is also obvious that defendants used a description which, except for the reference to public land survey, is exactly what they should have used for unsurveyed lands, for they did " * * * conform as near as practicable with the United States system of public land surveys * *.*." 30 U.S.C.A. 308, §35. We note that the plaintiffs' location notices also refer to "sections 18 and 19, township 12 south, range 100 west of the sixth principal meridian." Two of their claims refer to the lands as located " * * * in what is now unsurveyed territory, which surveyed, will embrace approximately the east half of the northwest quarter of section 18 * * *." The reference to "sections 18 and 19 * * * " undoubtedly is to the same United States Survey Map which plaintiffs contend defendant may not use. The only difference, as we view it, between the conflicting descriptions is that defendant's descriptions refer to a non-existent public survey, and plaintiffs' to the fact that the lands were not yet surveyed. In this connection we point out that plaintiffs have to succeed on the strength of their own title, not on the weakness, if any, of defendant's. See *Smith v. Whitney*, supra.

In *Duncan v. Fulton* (1900), 15 Colo. App. 140; 61 Pac. 244, it was held that a location certificate that gave the government section, in which it was located, and then proceeded with other data to locate the claim and tied the surface boundaries by course and distance to the discovery shaft was a sufficient description.

As above stated it is a question of fact whether defendant's claims could be found on the ground and there is sufficient evidence in the record to support the findings of the trial court in that regard. We will not disturb it on review. *Lucky Five Min. Co.*, supra.

We hold that the trial court was correct in finding that the descriptions in question did meet their purpose of giving reasonable notice to other locators, since the claims could be found and located on the ground if one followed the descriptions therein. This is true even though part of the descriptions stated "described by legal subdivisions of public land survey." We hold that the questioned wording is mere surplusage when in fact no such survey existed in regard to these claims when originally located.

The reference to public land survey could have misled no one where no such official public survey in fact existed. Any reasonable person searching for the claims would have merely gone to the areas described and looked for boundary markers, the sufficiency of which, when consisting of stone, is the other question to be decided.

We note that the record disclosing the "PRETRIAL CONFERENCE MEMORANDUM" states, *inter alia*, "There is no issue on the boundary markings by plaintiff." We thus do not review the adequacy thereof, except as to the material they were made of, though other matters are presented at some length with numerous authorities pro and con in the briefs. We limit what we hereafter say as to whether materials other than wood can be used for "posts" under our statute, plaintiffs contending that stone posts as used by defendant are not adequate.

We find nothing in the statute (C.R.S. '53, 92-22-12) which requires that claim stakes or posts be made of wood. It is common knowledge that mineral discoveries are often made on peaks, plains, or mesas where no trees in fact exist from which stakes could be made. And it might be that wooden posts would not be readily available when a discovery had to be marked. To hold that other materials cannot be used to comply with the statutory requirement of "posts" would indeed be unreasonable and would deny it a fair interpretation. We

cannot interpret a law to mean what it does not express and what it was evident it was not the intention of the legislature to express. *State of Nevada, ex rel. Wall v. Blasdel* (1868), 4 Nev. 241.

*Black's Law Dictionary*, 1951 Edition, citing authority defines the word "post" as: "Post, n. * * * A landmark." *Webster's New International Dictionary* (1949) states: "Post * * * n. * * * * A piece of timber, metal, or other solid substance, fixed, or to be fixed, firmly in an upright position * * *."

■ In *Young*, supra, a jury finding that a "rock" constituted a monument was held to be conclusive, and it was further held that the mere fact that the subsequent locators were unable to find any trace of stakes, or to trace the boundaries of the claims of the prior locators, was not conclusive that the claims had not been distinctly marked. This latter view is the trend of the decisions today. See *Nichols v. Ora Tahoma Mining Co.* (1944), 62 Nev. 343, 151 P. (2d) 615.

It is true that in *Pollard v. Shively* (1880), 5 Colo. 309, it was held that a "stump" did not meet the statutory requirement of a "post." That, however, is a far cry from *setting* a stone as a post, as was done for several of the corners in the instant case. We cannot consider *Pollard* as contra to our views herein.

*Taylor v. Parenteau, et al.* (1897), 23 Colo. 368, 48 Pac. 505, seems to indicate that the required "posts" should be of wood and states that lettering cut in *solid* rock is insufficient. Insofar as it gives the impression that "posts" have to be of wood it is expressly rejected by us at this time as not being in accord with the statutory requirements.

Here the trial court found from the evidence before it that the defendant's claims could reasonably be traced upon the ground and were properly marked when originally located. We think the evidence adequate to sustain this conclusion.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE HALL concur.